THE MEHRHOF BROTHERS' BRICK MANUFACTURING COM-
PANY v. THE DELAWARE, LACKAWANNA AND WEST-
ERN RAILROAD COMPANY ET AL.

1. An action will lie against an individual or private corporation main-
taining a nuisance by one who has suffered special damage therefrom.
2. The plaintiffs, who have a brick yard on a navigable stream, allege, in
their declaration, that the defendants, by an unlawful obstruction
therein, have shut them off from the natural market for their wares,
but omit to state the place at which the obstruction is placed. *Held,*
on general demurrer, that as a matter of substance such description is
unnecessary, and that considered as a matter of venue in the body of
the pleading it is a matter of form, and within section 139 of the Prac-
tice act.
3. An action for an injury to a right incidental to the use of personal
property is properly styled "in tort," under Rule 15.

On demurrer to declaration.

Argued at June Term, 1888, before BEASLEY, CHIEF
JUSTICE, and Justices KNAPP, MAGIE and GARRISON.

For the plaintiffs, *James B. Vredenburgh.*

For the defendants, *Flavel McGee.*

The opinion of the court was delivered by

GARRISON, J.   The plaintiffs, who operate a brick yard at
the township of Lodi, in the county of Bergen, on the bank
of the Hackensack river, bring this action against the defend-
ants for unlawfully obstructing the said river, whereby the
boats of the plaintiffs, provided for transporting their bricks to
market, were prevented for a long period of time from passing
down said river, during which time the plaintiffs bore the
expense of their keep, together with the loss of the sale of a
large quantity of their bricks.

To this declaration a general demurrer is interposed.

The causes for demurrer are reducible to three:

*First.* That the declaration does not disclose an actionable tort.

*Second.* That there is no sufficient allegation or description of the locality of said obstruction.

*Third.* That the action is illegally styled an action " in tort."

1. It is unquestionably the general rule that a private action does not lie for a public injury.   But it also is a firmly established doctrine that he who suffers from a common nuisance some special injury different from that sustained by the rest of the public shall have his remedy therefor.   There has been, it is true, some vacillation in judicial opinion as to what injuries were special within the meaning of this rule.

In *Iveson* v. *Moore,* 1 *Ld. Raym.* 486, plaintiff brought his action against the defendant for obstructing a highway leading to his coal mine, whereby he lost custom.   The Court of King's Bench were divided upon the question of his right to recover.   But upon a subsequent hearing before the judges of the Courts of Exchequer and Common Pleas, the verdict for plaintiff was unanimously sustained.   Following this case in 1794 the question was again before Lord Kenyon, in the case of *Hubert* v. *Groves,* 1 *Esp. N. P.* 148, and the doctrine of Iveson *v.* Moore was ignored, although relied upon by Erskine in his argument for plaintiff on the rule to set aside the non-suit.   A few years later the case of *Rose* v. *Miles,* 4 *Man. & Sel.* 101, raised the question of special injury sustained by the plaintiff, who was obliged to moor and unload his barges because of an obstruction in a navigable creek.   Lord Ellenborough, while attempting to distinguish this case from Hubert *v.* Groves, in effect overruled the former case, and laid the foundation of the modern rule upon this subject.   This may be stated to be that when a person sustains a special damage, either to himself or his property, arising directly or consequentially from the obstruction of a highway, and differing in kind from that sustained by the public at large, he shall have his remedy therefor.   *Co. Lit.* 56 ; *Hart* v. *Bassett, T.*

*Jones* 156; *Chichester* v. *Lethbridge, Willes* 71; *Iveson* v. *Moore, supra; Rose* v. *Miles, supra.*

In the case before us the plaintiffs clearly bring themselves within this rule as to special damage by the allegation of loss of the use of their boats, which were shut off from the channels of trade, their expense in victualing them, and the loss of trade and profit.

2. The second ground of demurrer questions the sufficiency of the description of the location of the obstruction. The contention of the defendants is that this is a local action requiring a particular description of the *gravamen.*

In passing upon this objection, it must be borne in mind that the action in the present case is not for damages for an injury done to realty or arising from an injury to any real right of plaintiffs. It was not plaintiffs' brick yard that was injured, it was their right to dispose of their bricks. If such a cause of action be called *local,* it is by force of precedent, and not upon the essential principles upon which the division of actions into local and transitory is based.

Mr. Stephens, in his brief sketch of trial by jury, traces the history of the practice of "laying the venue truly" from the period when the jury were summoned as witnesses down to the time of the change whereby they became judges of fact from the testimony of others. He shows that in the former case it was of essential importance that the jury should have personal knowledge of the facts, and hence that the venue should be laid truly at the place where the facts arose, whereas after the latter change this became a matter of no practical importance.

"A difference," says this learned writer (*Steph. Pl.* 288), "began now to be recognized between local and transitory matters. The former consisted of such facts as carried with them the idea of some certain place comprising all matters relating to *realty* and hardly any others." The rule, as it soon became, is stated by Mr. Chitty as follows (1 *Chit. Pl.* 268): "Where the cause of action could only have arisen in a particular place or county it is local, and the venue must be so

laid." This author, in speaking of the extension of the local action to certain actions for damages merely, confines it in terms to actions affecting interests in real property.

The distinction thus early made was easy of application, where the line could be sharply drawn; and in mixed cases, where the damage to a personal right was inflicted by interference with a right in real property, as an easement, the courts leaned to the side of holding it a local action. This was, in principle, a departure from the original distinction, for all of the essential reasons for the division were no longer applicable, since the cause and result of such injuries might be in different places or counties, and the judgment, to have effect, did not have to be in the same county with the injury, as in ejectment, real actions, or proceedings *in rem.*

Thus there arose a subdivision of local actions in which the distinction was formal merely. This led Lord Mansfield, in *Mostyn* v. *Fabrigas, Cowper* 161, 176, to say: "There is a formal and a substantial distinction as to the locality of trials. I state them as different things; the substantial distinction is, where the proceeding is *in rem* and where the effect of the judgment cannot be had, if it is laid in the wrong place."

Later, Lord Ellenborough, in *The Company of the Mersey* v. *Douglas,* 2 *East* 497, which was an action for diverting the water of a navigable stream, said: "This action is, in its nature, confessedly local, but the question is whether the *gravamen* need be described with any local certainty, and I incline to think it need not, but that it is sufficient if it be laid at any place within the body of the county, * * * for otherwise how is a venue to be laid to the fact of the obstruction when it takes place in the higher part of the stream flowing in one county, and the injury is sustained in the lower part of the stream, in a different county in which the action is brought? It is sufficient to describe the substance of the injury in order to give the other party notice of what he is to defend, and it is sufficient, in this form of pleading, to allege the *gravamen* at any place within the body of county. There-

fore the manner in which it is here stated ought rather to be referred to *venue* than to local description."

The distinction thus indicated has been preserved, with the effect of placing outside the class of local actions requiring a particular description of the location of the injury, all those actions for damages for injuries which could have happened in some other place, or where recovery of real property is not sought.

In the case of *Livingston* v. *Jefferson*, 1 *Brock.* 203, which was trespass *quare clausum fregit* against a former president of the United States, brought in the Circuit Court for the district of Virginia, for damages for removing the plaintiff from the Batture in New Orleans, Chief Justice Marshall held that where the action was for damages and not to recover real property, &c., the distinction between local and transitory actions, while still to be observed, was merely technical. This was also the opinion of Chancellor Walworth, sitting in the Court of Errors, in the case of *Watts* v. *Kinney*, 6 *Hill* 82. And in *Gibbons* v. *Ogden*, 1 *Halst.* 285, it was held, in an action for restraining the plaintiff (by an injunction of a foreign state) from navigating a certain highway between specified points, that the location of the tort need not be described.

We may conclude, then, that a description of the location in the present action is not a substantial averment, and if made at all, is to be referred to matter of venue only.

The practice of laying the venue in the body of the declaration has, for reasons already given, become a mere matter of form, or, in the language of Mr. Stephens, "an unmeaning form; the venue in the margin having been long found sufficient for all practical purposes." *Steph. Pl.* 282.

This practice was, in the English courts, abolished by the making of the Rule of Hilary Term, 4 *Wm. IV.*, which provides that "in future the name of a county shall in all cases be stated in the margin of a declaration and shall be taken to be the venue intended by the plaintiff, and no venue shall be stated in the body of the declaration, or in any subsequent pleading."

I state this rule as showing how entirely formal the practice of laying a venue in the body of a pleading had become in the eyes of those who shape the practice of the English courts.

Since, therefore, an affirmative statement of the location of the obstruction is not necessary by way of description, and if inserted by way of venue in the body of the pleading would go to a matter of form only, its omission is no ground for general demurrer, being within the operation of section 139 of the Practice act, which provides that no pleading shall be deemed insufficient for any defect which could theretofore be objected to only by special demurrer. That the objection to the failure to state the venue in the body of the declaration is within the operation of this statute was decided in the cases of *Reed* v. *Wilson*, 12 *Vroom* 29, and *Gibbons* v. *Ogden*, 1 *Halst.* 285.

3. Finally, it is said that the present action is illegally styled " in tort."

The essence of the present action is the interference with a personal right of plaintiffs incident to the use of their personal property. A right incident to the use of personal property is itself personal property. Hence, under the rules of this court, an action for damages for the infringement of such a right should be styled " in tort." *Rule* 15.

This disposes of the several causes of demurrer, none of which being sustainable, the demurrer must be overruled.