E. J. BROOKS COMPANY v. DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY ET AL.

Argued February 17, 1910—Decided November 16, 1910.

1. Where the defendant without lawful authority tore down a fence and gateway upon the plaintiff's premises and obstructed the passage of its private driveway so as to subject the plaintiff in the transaction of its business to an enforced expenditure of manual toil and labor and physical inconvenience not suffered by the rest of the public—*Held*, that the plaintiff in an action for damages for the nuisance, thereby suffered a pecuniary loss since its enforced expenditure of toil and labor was peculiar to it from that imposed upon the public at large and was transmutable by the verdict of a jury into money damages.
2. Where there is a conflict of testimony upon an important issue in the cause, the question of fact thus controverted is for the jury, and it is error for the court to direct a verdict.

---

On writ of error to the Essex Circuit.

Before Justices REED, TRENCHARD and MINTURN.

For the plaintiff, *William P. Martin* and *Theodore D. Gottlieb*.

For the defendant, *McCarter & English*.

The opinion of the court was delivered by

MINTURN, J. The writ of error in this case presents exceptions to the rulings and the charge of the trial court.

The case was presented to the jury upon these facts:

One Bathgate was seized of a tract of land located on the north side of Park avenue, west of Twelfth street, in the city of Newark, and which had as its westerly boundary the right of way of the defendant company. Bathgate conveyed a portion of this land to Edward J. Brooks, who thereafter conveyed the portion in controversy in this suit to the plaintiff. In this conveyance the easterly boundary of the tract is fixed to conform to the boundary line of Thirteenth street when continued, the street at that time not having been opened up. In the conveyance from Bathgate to Brooks, the former covenanted that the latter, his heirs and assigns, or those claiming under him, should have the right to use his land east of the Thirteenth street line extended, to the corner of Park avenue, as a roadway, until such time as Thirteenth street should be opened by the city, and that if Bathgate before that time should sell his remaining buildings adjacent to plaintiff's easterly line, then Bathgate would open at his own expense a roadway between the plaintiff's property and the railroad tracks for the use of Brooks or his successor in title to Park avenue. Subsequently another agreement was made between Bathgate and Brooks to the effect that, upon the opening of Thirteenth street by the municipal authority, Bathgate would give for the purpose of a public street a sufficient quantity of land for the continuation of the street, which street should then become the easterly boundary line of the Brooks premises. Thereafter Brooks conveyed the *locus in quo* to the plaintiff, which deed contained the covenant that the plaintiff should have the "right to use the land east of the proposed line of North Thirteenth street and the corner of Park avenue as a roadway until such time as said street shall be ordered opened by the city authorities." The plaintiff had thereafter built a roadway to its land from the northerly line of Park avenue across the proposed line of continuation of Thirteenth street, and this roadway constituted the only practicable means of

ingress and egress to and from the plaintiff's business, which was that of manufacturing railroad supplies and specialties in tin, and which it was necessary to carry out upon trucks and other conveyances. While this *status* existed the railroad company entered upon the construction of an elevated system of tracks and contracted with Sandford & Harris, the other defendants, to perform the work. It was necessary, as part of the work, to construct an abutment on the northerly line of Park avenue so as to carry a bridge over the street. This work also involved a change of grade of Park avenue by filling in, and this incidentally resulted in obstructing the plaintiff's roadway, and in tearing down the fence and gateway which the plaintiff maintained upon the roadway. The effect of this was to force the plaintiff to seek a road of necessity elsewhere over private property to Twelfth street and return to Thirteenth street. This detour subjected the plaintiff to inconvenience, trouble and delay.

Thereafter and on December 9th, 1909, the city of Newark authorized this change of grade by ordinance, and the trial court therefore limited the damages recoverable to the interim between the beginning of the work by the defendant and the date of the passage of this ordinance, and the jury were directed by the court to find for the plaintiff, and after deliberating they returned a verdict for the plaintiff for $500.

The declaration sounded in trespass on the case for the erection of a nuisance at plaintiff's entrance, whereby its business was damaged and inconvenienced and its real estate depreciated in value, and the plea was the general issue.

Testimony tending to show the nature and extent of the damage and the inconvenience was offered and admitted at the trial as a basis for the verdict, and, among other items, the tearing down of the plaintiff's fence over the roadway was proved. The learned trial court limited the jury in the estimate of damages, not only to the interval of time referred to, but instructed them as follows:

"What we have to do with is simply the damages which have been caused the plaintiff during the months in question by

the interruption of the free use of his right of way over the property."

The defendant contends that the charge of the court was erroneous and misleading because of its reference in various parts to the statutory duty and liability of the city in the matter of grade elevation, but we cannot perceive, in view of the specific and unequivocal direction above quoted from the charge, how the jury could be misled as to their legal duty in the premises.

The gravamen of the declaration was the damages caused by an unwarranted and illegal act of the defendants amounting to a nuisance. This was directly put in issue by the plea, and the charge of the court was decidedly pertinent to the elucidation of that issue. The language of the court in its reference to the city of Newark and the general obligation of municipal bodies to make compensation for damage illegally caused, was undoubtedly of a prefatory character, intended to elucidate the specific problem with which the jury had to deal, and was in no sense harmful. Thus, it was not incorrect to say that the plaintiff's right of way was "a thing of value" under the testimony. Nor was it incorrect to state, under the circumstances, that "any corporation taking it for public use must follow the prescribed statutory formula and pay the damages," for such clearly is the legal duty, although not particularly pertinent except as elucidating the matter in issue. *Pennsylvania Railroad* v. *Angel*, 14 *Stew. Eq.* 316; *Driscoll* v. *Carlin*, 21 *Id.* 28.

The defendant also assigns as error the charge of the trial court that the plaintiff was entitled to damages by reason of inconvenience to his means of ingress and egress to Park avenue, without proof of any pecuniary loss.

We are not prepared to give assent to the proposition that one who suffers distinct and great inconvenience, loss of time and an expenditure of manual labor of a character different from that suffered by the rest of the public, and which has been imposed upon him by a tort-feasor for his own benefit, does not suffer a pecuniary loss, or, in other words, a loss distinctly capable of admeasurement by a jury for the purpose

of awarding as a satisfaction pecuniary compensation. The expression "special damage" supplies the legal consideration necessary to support the action of nuisance. *Ricket* v. *Metropolitan Co., L. R.,* 2 *H. L. Cas.* 175; *Higbee* v. *Camden and Amboy Railroad,* 4 *C. E. Gr.* 276; *Roessler, &c., Co.* v. *Doyle,* 44 *Vroom* 521; *Ryerson* v. *Morris Canal and Banking Co.,* 40 *Id.* 505; *Driscoll* v. *Carlin, supra.*

And so it has been held that the creating or continuing of a nuisance in any form which involves the physical invasion of or interference with another's property, is a wrong for which at least nominal damages may be recovered; and, therefore, neither the absence of actual damages nor even benefit from the nuisance nor abatement of it will prevent such recovery. *Cory* v. *Silcox,* 6 *Ind.* 39; *Alexander* v. *Kerr,* 2 *Rawle* (*Pa.*) 83; *Munroe* v. *Stickney,* 48 *Me.* 462; *Francis* v. *Schoellkopf,* 53 *N. Y.* 152; *Wesson* v. *Iron Co.,* 13 *Allen* (*Mass.*) 95; *Kimel* v. *Kimel,* 4 *Jones* (*N. C.*) 121; *Marcy* v. *Fries,* 18 *Kan.* 353.

As illustrative of this principle it has been held that the overhanging of another's land is a nuisance, for which an action will lie without proof of actual damage. *Bellows* v. *Sackett,* 15 *Barb.* 96; *Codman* v. *Evans,* 7 *Allen* 431; *Tucker* v. *Newman,* 11 *Adol. & E.* 40; *Baltimore and Potomac Railroad* v. *Fifth Baptist Church,* 108 *U. S.* 317.

We do not apprehend that the words, "pecuniary loss," as employed in the cases of *Mehrhof* v. *Delaware, Lackawanna and Western Railroad,* 22 *Vroom* 56, and *Ryerson* v. *Morris Canal and Banking Co., supra,* are intended to militate against this view, for, when a loss is distinctly measurable in dollars and cents as an enforced expenditure of toil and labor, which is transmutable into money value, it is a distinct pecuniary loss to be compensated for and made good according to the practice of the courts of common law by a money damage or compensation. *Hale Dam.* 3.

Our difficulty, however, in sustaining this judgment is presented by the court's direction of a verdict for the plaintiff in view of the conflicting testimony as to the location of the driveway; and in view of the refusal of the court to charge

the sixth request of defendant, which was substantially that if the driveway was found by the jury to be over and upon the right of way of defendant, "and defendant in connection with the work blocked up the driveway, there can be no recovery by the plaintiff."

The gravamen of the declaration was the ownership and control of the driveway by the plaintiff. The dispute injected into the case by testimony *pro* and *con* upon this essential prerequisite to a recovery created an issue of fact regardless of the degree and quality of the testimony, and that fact should have been submitted to the jury to determine.

We are constrained upon that ground to reverse the judgment.