FANNY S. WILDER and husband *vs.* FRANKLIN DE COU and others.

### March 26, 1879.

**Evidence—Terms of Art.**—The signification of words having a technical sense because they are employed in a particular art, may be shown by the testimony of experts in that art.  Application of this rule to the word "raceway," as used to designate a mode of conducting water for hydraulic purposes.

**Town Plat—Reservation.**—Consideration, for the purposes of this case, of the effect, in a certificate endorsed upon a statutory town plat by the maker thereof, of the words following, viz. : " reserving the right at any future time of conducting the water from the stream called Trout Brook, through or across any street or alley, or of flowing the water of said creek over and across any street or alley."

**Deed—Exception.**—Consideration of the effect, in a deed of a certain town out-lot, of the following words, viz.: " Saving and excepting the water privilege of a stream known as Trout Brook, to be carried through the said described lots, as aforesaid, in a raceway.".

**"Raceway" defined.**—The finding of the court below, that the word " raceway," as here used, means an artificial canal in the earth, or a channel cut in the ground, *held* to be sustained by the evidence.

**Obstruction of Street—Remedy of Abutter.**—The owner of a town lot or out-lot suffers a peculiar damage by the obstruction of a portion of a public street immediately in front of his lot or out-lot. · He may, therefore, maintain an action to remove or prevent such obstruction, although the same may be a public nuisance.

Plaintiffs brought this action in the district court for Ramsey county to restrain the defendants from erecting or maintaining any scaffolding or flume upon a certain out-lot 14, or the streets adjacent thereto, or from conducting the waters of a stream called Trout Brook across the same by means of an existing channel or raceway. The action was tried before *Wilkin,* J., who ordered judgment for the plaintiffs. A new trial was refused, and the defendants appealed. At the trial, the plaintiffs, under objection and exception, introduced oral evidence of the meaning of the word "raceway," and that the structure complained of was not a raceway. The defendant De Cou, being called as a witness, and having testified as to the dimensions and height of the flume erected by defendants on out-lot 14, the defendants' counsel offered to prove that it was necessary that the water should be delivered at the wheel of defendants' mill, with the flume at its present height. The evidence offered was excluded, on plaintiffs' objection, and the defendants excepted. All other matters are fully stated in the opinion.

*Allis & Allis* and *Geo. L. & Chas. E. Otis,* for appellants.

*E. C. Palmer* and *Harvey Officer,* for respondents.

BERRY, J. On September 23, 1852, B. W. Brunson, owning certain lands in fee, laid out and platted the same as "Bass's addition to the town of St. Paul," and "Bass's addition of out-lots to the town of St. Paul," and the plat was duly filed for record pursuant to statute. Endorsed upon the plat was a certificate, duly signed and acknowledged by Brunson, and in these words, viz.: "I, Benjamin W. Brunson, proprietor of the lands covered by the within plat of Bass's addition to the town of St. Paul and Bass's addition of out-lots to the town of St. Paul, having laid out and platted the same into village or town lots and out-lots, for the purpose of village or town use, give, grant and release unto the public all streets and alleys as laid thereon, reserving the right, at any future time, of conducting the water from the stream called Trout Brook, through or across any street or alley, or of flowing the water of said creek over and across any street or alley." The following sketch of a portion of the plat will be sufficient for the purposes of this opinion. The numbered lots are out-lots.

By deed of September 24, 1852, Brunson and wife conveyed to J. W. Bass lots 1, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14 and 15, of Bass's addition of out-lots to St. Paul, together with all the appurtenances and privileges thereunto appertaining or belonging, and all the estate, right, title, interest and claim whatsoever, in law or in equity, of the said Bass and wife, of, in and to the same. This deed contained full covenants of warranty, and was without reservation or exception of any kind. By warranty deed of September 17, 1866, Bass and wife conveyed to Helen, wife of John L. Merriam, out-lot numbered 14, with the following description and reservation, to wit: "Out-lot numbered fourteen, (14,) in Bass's addition of out-lots to St. Paul, Minnesota, according to the recorded plat thereof on file in the office of the register of deeds in and for said county of Ramsey, saving and excepting the water-privilege of a stream known as Trout Brook, to be carried through the said described lots as aforesaid in a raceway; to have and to hold the same, together with all the hereditaments and appurtenances thereunto belonging or in anywise appertaining, unto * * the said Helen M. Merriam, her heirs and assigns, forever." By warranty deed of March 14, 1871, Helen M. Merriam and her husband conveyed said out-lot fourteen to the plaintiff Fanny S. Wilder, by the same description, and subject to the same saving and exception, contained in the deed last mentioned.

It is found by the court below, that at the time when Brunson's plat was made and filed for record, there was, and there still is, a stream known as Trout Brook, flowing through the lands embraced in such plat, through out-lots seven, thirteen and fourteen, and across Monroe, Patridge and Woodward streets; that after crossing Woodward street, Trout Brook runs southerly to a mill of defendants, erected after the conveyance before mentioned to Fanny S. Wilder; that in 1861, J. W. Bass erected upon Trout Brook, on out-lot seven, a sash factory, which was run by him and his lessees until its conveyance to the defendants' grantors; that before the com-

mencement of this action, the defendants, for the purpose
and with the intention of using the water of Trout Brook,
built a scaffolding for a flume, and a flume thereon, over and
across out-lots seven, nine and thirteen, and over and across
the one-half of the width of Patridge street, from the south
line of out-lot thirteen towards the north line of out-lot four-
teen, so as to partially obstruct said street, and claimed the
right and threatened, and still claim the right, and threaten
and intend to erect and build said scaffolding and flume over
and across the whole width of said Patridge street, and over
and across said out-lot fourteen, and over and across said
Woodward street, with the purpose of using said scaffolding
and flume to carry the water of said Trout Brook to the mill
of defendants, south of Woodward street; that the flume is
of wood, about three and a-half feet wide and two and a-half
feet high, and constructed upon trestle-work about twelve feet
wide, resting upon the ground, the trestles being from six to
eight feet apart; that the trestle-work and flume will pass
over out-lot fourteen about fifty feet east of the channel of
Trout Brook, and over a part of said out-lot which has
been improved by the plaintiffs by filling; and the bottom
of the flume will be eleven and one-half feet from the sur-
face of the ground where it enters upon out-lot fourteen,
and thirteen and one-half feet from the surface where it
leaves said out-lot; that the value of out-lot fourteen is
seven thousand five hundred dollars; that a large portion
of the same, west of the flume, lies upon the hillside,
and cannot be used, and that most of the improved land
upon the same lies east of the brook; "that the erection of
said scaffolding and flume across said out-lot, in manner
aforesaid, prevents the use of said lot for building or other
purposes; and its erection and continuance will be an irre-
parable injury to said out-lot fourteen, and will be an inter-
ference with and obstruction to the said streets as public
highways, and for village or town use."

It is also found as a fact, that the term "raceway," as used

by persons engaged in the construction and operation of mills and factories run by water, and the application of water to machinery, means "an artificial canal dug in the earth, leading from the dam of a stream to the machinery which it drives, and also to a similar water-course leading from the bottom of a water-wheel."

As a conclusion of law, the court below finds "that the plaintiffs are entitled to a judgment herein, restraining and enjoining said defendants forever from erecting or constructing any scaffolding or flume over or across said out-lot fourteen of said Bass's addition of out-lots to the town of St. Paul, and from entering upon or in any manner interfering with said out-lot fourteen, or with said brook flowing through the same, except for the purpose of using any water privilege they may own of, in or upon said Trout Brook, by means of a raceway—that is to say, a channel cut in the ground, and running through said out-lot fourteen; and from erecting said scaffolding and flume over or across said Patridge and Woodward streets, or any scaffolding, or flume, or structure that will interfere with the use of said streets as public highways."

The rights of the defendants, as respects the matter in controversy in this action, are claimed and found to be derived from, and to depend upon, conveyances made by Bass and wife, after the execution and recording of the conveyance from Bass and wife to Helen M. Merriam.

Exactly what rights the defendants acquired by virtue of the conveyances upon which they are found to depend, it will not be necessary for us to inquire, since, upon the foregoing findings of fact, we are of opinion that the plaintiffs, by virtue of a title and estate prior and paramount to those of the defendants, (whatever they may be,) are entitled to the relief awarded by the court below. The validity of the reservation made by Brunson, in the certificate upon his plat, is questioned by the plaintiffs, upon the ground that it is repugnant to his dedicatory grant of the streets to the public, under the operation of the town-plat statute. If this position is well

taken, the attempted reservation is no reservation at all. But for the purposes of this case, it may be admitted that the reservation is valid, so that it reserved, among other things, the right of conducting the water of Trout Brook "through or across" Patridge and Woodward streets. For the same purpose it may be admitted, against the contention of the plaintiffs, that the right to conduct the water "through or across" streets embraced the right to conduct it over them, and that the reservation was not merely personal to Brunson, but the right reserved was assignable. Obviously, if these admissions are not made, the defendants' claim as respects the streets mentioned is at an end, so far as it depends on Brunson's reservation.

Brunson's status, at the time of his conveyance to Bass, was, then, this: He owned the fee of the lots upon his plat, and also the fee of the streets, subject to the right of the public to use the streets for street purposes, a right which, in its turn, was subject to his (Brunson's) right to conduct the water of the brook through or across the streets. As respects the streets, an equivalent statement would be, that in making his dedicatory grant to the public, he *retained*, along with the fee of the streets, and as a part of his rights as owner of the fee, the right of conducting the water as aforesaid. When he conveyed out-lots 13, 14 and 15 to Bass, "together with all the appurtenances and privileges thereunto appertaining or belonging, and all" his "estate, right, title, interest and claim whatsoever, in law or in equity, of, in and to" the same, he conveyed not only those out-lots as marked upon the plat, but also the fee of those portions of Patridge and Woodward streets lying between them, (for in a case like this, as settled in *Schurmeier* v. *St. Paul & Pac. R. Co.*, 10 Minn. 59 (82;) *City of Winona* v. *Huff*, 11 Minn. 75 (119;) *Brisbine* v. *St. Paul & Sioux City R. Co.*, 23 Minn. 114, the lot carries with it the fee of the street on which it lies, to the centre line thereof,) and all the rights and privileges of every kind which he possessed in such lots and intervening portions of streets.

Bass thus acquired all of Brunson's rights in out-lots 13, 14 and 15, and in those portions of Patridge and Woodward streets between them, including the reservation, so far as applicable to those out-lots and portions of streets. By their deed to Helen M. Merriam, Bass and his wife convey out-lot fourteen, which carried with it the fee of the adjoining portions of Patridge and Woodward streets, to the centre thereof, and a street easement in the remaining half of such adjoining portion of those streets. This deed saved and excepted only "the water-privilege of a stream known as Trout Brook, to be carried through" out-lot fourteen, "in a raceway." Whatever there was in the reservation made by Brunson, in his certificate, which was not embraced in that saving and exception, was not reserved or excepted in the deed to Helen M. Merriam. She therefore took the fee of out-lot fourteen, and of the adjoining portions of Patridge and Woodward streets to the centre thereof, subject to the public street easement, and a street easement in the remaining halves of those portions, all subject only to the saving and exception contained in the deed of Bass and wife to her. Save so far as Brunson's reservation was included in the saving and exception in the deed to her, Mrs. Merriam's rights were the same as if that reservation had never been made.

This brings us to inquire for the meaning and effect of the saving and exception in the deed of Bass and wife to Mrs. Merriam; and in the view which we take of it, it is not important to determine whether it is technically an exception or a reservation. The court below finds, as a fact, that a raceway, as the term is used in a case of this kind, is an artificial canal dug in the earth, or, as it is expressed in the conclusion of law, a channel cut in the ground. This finding is, in our opinion, borne out by the testimony in the case. The structure which, as the court finds, the defendants had partly erected, and threatened and intended to continue to erect, over out-lot fourteen and Patridge and Woodward streets, was not a raceway, within the meaning of that term as found

2

by the court. It was something entirely different, and altogether more disadvantageous to the plaintiffs, and therefore something which was not covered by the saving in the deed from Bass and wife to Mrs. Merriam; something which, for that reason, the defendants had no right to erect or maintain. Their right to conduct water was by a raceway only.

With regard to the testimony as to the meaning of the word "raceway," and as to whether the structure in question was a raceway or not, we think that the witnesses showed themselves familiar with its meaning, and therefore qualified to testify to the same; and that it was entirely competent to show what that meaning was. The word "raceway" is (as it was shown to be) a term of art, a term in hydraulics. We can conceive of no reason why it is not proper to show its meaning as such, in accordance with the general rule that the signification of words having a technical sense, because employed in a particular art, may be shown by the testimony of experts in that art. 1 Gr. Ev. § 280; *Brown* v. *Brown*, 8 Met. 573. There is nothing in the other facts found by the court which goes to show that the meaning attributed to the word "raceway" by the court is not that which the parties intended. The facts as to the location of Bass's sash factory, and that the defendants' mill was not erected until after the conveyance to Mrs. Wilder, together with other facts found by the court (which we have not recited) in regard to the language of the conveyances under which the defendants claim, are not at all inconsistent with this meaning of the word "raceway." They rather tend to show its correctness.

The proposed testimony of the witness De Cou was properly excluded. As suggested by the plaintiffs' counsel, the question was not how the water could best be used, but whether the defendants had, as against the plaintiffs, a legal right to use it in the manner proposed and contemplated by them.

This brings us finally to consider whether, upon the facts found as heretofore recited, the plaintiffs are entitled to the particular relief granted them by the court below. That the

defendants, as against the plaintiffs, have no right to erect or maintain the structure already commenced, and the further prosecution of which they threaten and intend, and that their right to conduct water from the brook must be exercised by means of a raceway, we have already determined. Are the plaintiffs entitled to a remedy by injunction? So far as the nature and extent of the damage which the plaintiffs will suffer, if the defendants go on, are concerned, they are, upon the facts found by the court, clearly sufficient to authorize an injunction. It is found by the court below, in effect, that the erection proposed and threatened by defendants will, if permitted to be made and maintained, destroy the value of the plaintiffs' out-lot fourteen, and will obstruct the streets. The court also found that the injury will be "irreparable." This finding follows, in law, from the other. The case is, then, one in which an injunction is proper to prevent threatened irreparable injury. It is also evidently proper, as preventing future litigation.

That the plaintiffs' rights of property are such as to entitle them to the relief granted, is, we think, equally clear. They own out-lot fourteen, and the fee of the halves of the portions of Patridge and Woodward streets adjoining the same, and they also possess a street easement in the whole of those portions, in common with the public. In the enjoyment of these property rights, they are entitled to be protected by the application of the remedies afforded by law, one of which is the remedy by injunction. With respect to the portions of Patridge and Woodward streets adjoining out-lot fourteen, they have a peculiar right, for, by the obstruction, they suffer a special and peculiar damage on account of their adjacency to the same. As to them, the obstruction is not the case of a simple public nuisance, but one of a nuisance from which they suffer special and peculiar damage, and it is therefore in the nature of a private nuisance. This state of facts, as respects that portion of the streets mentioned, distinguishes their case from that of the ordinary public nuisance, and entitles them

to private and, so to speak, personal relief. *Milhau* v. *Sharp*, 27 N. Y. 611; *Dawson* v. *St. Paul Fire & Marine Ins. Co.*, 15 Minn. 136, and cases cited.

These conclusions dispose of this appeal, the result being that the order of the court below, denying a new trial, is affirmed.