(Franklin County Court of Common Pleas.)

McCORMICK HARVESTING MACHINE COMPANY v. THE KAUFFMAN-LATTIMER COMPANY.

---

*Action to recover damages for creating a nuisance, and to restrain its further continuance—Right of private person to sue for injunction—*

EVANS, J.

The defendant is the owner of premises situated at the northwest corner of Front and Chestnut streets, in Columbus, O., having a frontage of 62½ feet on Front street and 187½ feet on Chestnut street. Said premises being covered by the defendant's buildings in which it is engaged in carrying on a wholesale business in drugs, medicines, etc. The plaintiff is the owner of premises fronting on said Chestnut street, and being on the north side thereof and separated from the defendant's said premises by Park street which is 33 feet wide, and the C. & X. Railroad's right of way. Upon the plaintiff's premises is its business house where it is engaged in handling and selling farm implements, machinery, etc. Chestnut street is a public street of the city, and is 82½ feet wide. In 1891, the defendant, for the purpose of carrying on its said business, purchased its said premises and erected its building thereon which is about 62½ by 187½ feet, and entirely covers its said premises, and at the same time, erected, in Chestnut street, in front of its said building and adjoining the same on the south side thereof, a platform about fourteen feet long, four

feet wide and about five feet high at the west end thereof, and about eighteen inches high at the east end. This platform is used by the defendant and other persons having business with it, for loading and unloading wagons which for that purpose stand from three to forty minutes at a time, and each day the wagons and horses of the defendant, for a period of from one to two hours, and those of its customers, for perhaps about an hour each day, upon that part of the sidewalk that is not covered by the platform. The sidewalk is well paved, but the roadway of the street is not paved and is generally dirty or muddy. While the wagons are thus standing, the horses are turned around parallel with the building to enable pedestrians to pass around over the roadway through the street. The defendant has no access to its premises except from one of said streets across the sidewalk. When the wagons and horses are on the sidewalk pedestrians are compelled to walk around through the roadway of the street. The plaintiff uses its said premises for carrying on its said business, and also has flats and houses thereon which it rents to various tenants who reside therein. The plaintiff's agents, customers and tenants use said sidewalk between plaintiff's premises and High street, which is the principal business street of the city. The case is now here for final decision upon the pleadings, evidence and briefs.

That the obstruction of the street, as disclosed by the evidence, is a public nuisance, can admit of no question. That it is a plain violation of sec. 3884 of the Revised Statutes of Ohio is apparent; and by sec. 1878, Rev. Stat., it is the duty of the police force to remove it; and by sec. 2640, the duty is enjoined upon the city to keep its streets open and in repair and free from nuisance. Village of Cardington v. Admr. of Frederick's, 46 Ohio St., 446. City of Zanesville v. Famian, 53 Ohio St., 614.

The term "nuisance" is of extended application. Many definitions are given, necessarily varied because the word applies to a large number of subjects. "Nuisance", something noxious or offensive. Anything not authorized by law which maketh hurt, inconvenience or damage. It may be (a) private, as where one so uses his property as to damage another's or disturb his quiet enjoyment of it; (b). public, or common, where the whole community is annoyed or inconvenienced by the offensive acts, as where one obstructs a highway, or carries on a trade that fills the air with noxious and offensive fumes. The generally accepted rule is that although the nuisance be a public one, yet it is private also, if an individual sustain a special injury thereby, and he may maintain an action and recover his special damages, whether it be direct or consequential. Village of Cardington v. Adm'r. of Fredericks, 46 Ohio St., 446-447. The rule is well settled that in order to sustain an action by a private person for

damages, from an obstruction of a highway, the plaintiff must prove some damage peculiar to himself not suffered in common with the general public, 9 Am. & Eng. Ency. of Law, 414; Shear. & Red. on Neg. sec. 371; Farrelly & Co. v. The City of Cincinati, 2 Dis., 516, 519, 538-540. Elliot on Roads, 474, 496, 500. 10 Ency. of P. & P., 897-901. Jones on Easements secs. 543, 544, 550. Nor will a court of equity restrain the obstruction of a public street upon the petition of private citizens who will suffer no special injury therefrom different in kind from that to be suffered by the whole neighborhood or the public generally. 10 Ency. P. & P., 897-901, and notes 2 Kinkead's Code Pl., sec. 949; Sargent v. O. & M. Rd., 1 Handy, 52; Maxwell's Code Pl., 259-261; High on Inj., sec. 745, 762, 769; Putnam Sup. v. Valentine, 5 Ohio, 187; Smith et al. v. Heuston et al. Coms , 6 Ohio., 101.

As to what circumstances show a special injury which will entitle a private person to maintain an action for damages, or injunction, is a matter about which the decisions are not harmonious.

That the plaintiff sustains a special injury from the obstruction of the sidewalk, sufficiently appears from the evidence. The plaintiff has invested $60,000 in its premises which are in close proximity to the defendant's. The plaintiff's employes, customers and tenants use the sidewalk in going to and from the plaintiff's premises. They are daily subject to delay and inconvenience by the objection. That such daily obstruction of the sidewalk on a direct line between plaintiff's premises and High street which is the principal business street of the city, works damage to the plaintiff is a conclusion justified and required by the circumstances, although the evidence fails to show the amount or extent of the damage. The evidence fails to show that the plaintiff has lost any customers or business, or tenant, or rent, or the extent of the depreciation of its premises, by reason of the obstruction, and yet it is difficult if not impossible to escape the conclusion that it has suffered injury thereby, and that it will continue to be injured in like manner so long as the obstruction shall continue; and the fact that the extent and amount of the injury, or damage, is not susceptible of proof, affords a reason in addition to others, for granting to the plaintiff equitable relief.

The case of Calliman et al. v. Gilman, 107 N. Y., 360, is similar to the case here. In that case both the plaintiff and the defendant were extensive retail and wholesale grocers having stores near each other on the south side of Jersey street in the city of New York; and a large portion of the plaintiff's customers, in order to reach their store, were obliged to pass upon the sidewalk in front of the defendant's store. Goods were taken to and from defendant's store by means of trucks loaded in the street. The trucks were placed in the street adjoining the side-walk and then a bridge made of two skids planked over so as to make a plank way three-feet wide and fifteen feet long with side-pieces three and one-half inches high was placed over the sidewalk with one end resting upon the stoop of the defendant's store and the other end upon a wooden horse outside of the sidewalk near the truck to be loaded. This bridge was elevated above the sidewalk at the inner end about twelve inches and at the outer end about twenty inches, thus entirely obstructing the sidewalk, and goods were conveyed upon this bridge to and from the store. Persons wishing to pass upon the sidewalk in front of the store, when the bridge was in place, were obliged to step on the stoops and go around that end of the bridge. The bridge was usually removed when not in use; but there was uncontradicted evidence that it was sometimes permitted to remain in position when not in use, for ten or fifteen minutes, and that it sometimes remained in position when in use one hour, one hour and a half and sometimes even two hours; and the court found that the bridge thus remained in position across the sidewalk from four to five hours each business day between the hours of nine o'clock A. M. and five P. M., and that it obstructed the sidewalk the greater part of each business day. (Pp. 368 & 369). On delivering the opinion of the court Earl, J., said: "Such an extensive and continuous use of the sidewalk cannot be justified. It was a practical appropriation by the defendant of the sidewall in front of his store to his private use in disregard of the public convenience. Even if in some sense such use was necessary to the convenient and profitable transaction of his business, and if the obstruction was no more and even less that it would be by any other method of doing the business, these circumstances do not justify the obstruction. If the defendant cannot transact his extensive business at that place without thus encroaching upon, obstructing and almost appropriating the sidewalk during the business hours of the day, he must either remove his business to some other place or enlarge his premises so as to accommodate it. That it was unreasonable is too clear for dispute. He might use the bridge to load or unload a single truck, and this he could do at intervals during the day, at no time obstructing the street for any considerable length of time. But there is no authority and no rule of law which would warrant such an obstruction daily for hours, or even one hour continuously. The defendant was therefore, guilty of a public nuisance. (Page 369.) It is the undoubted law that the plaintiff could not maintain this action without alleging and providing that they sustained special damage

from the nuisance, different from that sustained by the general public; in other words, that the damage they sustained was not common to all the public living or doing business in Jersey street and having occasion to use the same. The plaintiffs did not demand any damage in their complaint, and none was awarded them by the judgment. They simply demanded an injunction restraining the nuisance, and such was the judgment given to them. The complaint sufficiently alleges the special damages. It sets forth the location of the stores of the parties on the same side of the street, near to each other, the character of the bridge, which when in use by the defendant was only thirty-five feet from plaintiff's store, and the manner and extent of the obstruction upon the sidewalk. From these facts alone, as they are fully set forth, it clearly appears that the plaintiffs suffered damage from the nuisance, which was not common to other persons having occasion to use the street.'' (Page 370.)

In Flynn v. Taylor, decided by the New York court of appeals Ootober 6th, 1891, and reported in 14 L. R. A., 556, damages to a nominal sum were awarded and an injunction granted by the trial court, which judgment the court of appeals affirmed. The case is similar to the one at bar. In that case the plaintiff and the defendant, each, carried on business on the same side of Sackett street in Brooklyn. The street was 60 feet wide, and the plaintiff kept a retail liquor store in a building he owned situated about 80 feet west of the defendant's premises. The defendant carried on the business of manufacturing saleratus and other articles of domestic consumption. Years before the action was begun the defendant, with the consent of the city authorities, erected on the sidewalk in front of his factory a platform 90 feet long, 2 feet 10 inches high, and 4 feet 8 inches wide. The defendant used this platform for loading and unloading trucks which for that purpose stood for several hours each day upon that part of the sidewalk not covered by the platform. The sidewalk and street, together with the bridge over the gutter between, were well paved, and on the same level, and there was usually no difficulty in walking around the obstruction on the sidewalk by going out into the street. While the trucks were standing across the sidewalk backed up to the platform for the purpose of receiving or discharging a load, the horses were generally turned around parallel with the building to enable pedestrians to pass over the carriageway through the street. The defendant had no access to his factory except from said street and across said sidewalk. When the horses and trucks were on the sidewalk, pedestrians were compelled either to climb the over platform or walk arouud through the street. In the opinion Vaun, Judge,

said, ''The owner of land abutting upon a public street is permitted to encroach on the primary right of the public to a limited extent and for a temporary purpose, owing to the necessity of the case. Two facts, however, must exist to render the encroachment lawful; (1) the obstruction must be reasonably necessary for the transaction of business; (2) it must not unreasonably interfere with the rights of the public. Any unnecessary or unreasonable use of a street, however, is a public nuisance, and is declared by statute to be a crime against the order and economy of the state. A remedy for the wrong against the public may be found in the indictment of the offender, or in a suit by the proper officer in behalf of the people to compel him to abate the nuisance. The right to maintain the action does not depend on the amount of the special damage, provided the plaintiff suffered some material injury peculiar to himself. We think that in a populous city, whatever unlawfully turns the tide of travel from the sidewalk directly in front of a retail store to the opposite side of the street is presumed to cause special damage to the proprietor of that store, because diversion of trade inevitably follows diversion of travel. The nature of this case was such that the amount of damages could not be shown, and hence the remedy at law would not only be inadequate, but would lead to a multiplicity of suits. While the defendant was doubtless careful to interfere with the rights of the public no more than was necesssary for the convenient transaction of his business with the facilities that he had, still he could not lawfully monopolize the sidewalk for several hours every day.''

For other cases arising out of obstruction of highways see Halsey v. Rapid Transit Co., 47 N. J. Eq., 380; State v. Chicago, M. St. P. Rd. Co., 77 Iowa, 442; People v. Cunningham, 1 Denio., 524; Jochem v. Robinson, 66 Wis., 638; Denby v. Willer, 59 Wis., 241; Clark v. Fry, 8 Ohio St., 375; White v. Kent, 11 Ohio St., 550; Hickok v. Hine, 23 Ohio St., 528, 528; Ester v. Springfield, 49 Ohio St., 96-97; Trustees of Burton Tp. v. Tuttale et al., 30 Ohio St., 62-66; McEllvaine et al. v. Wood, 2 Handy, 166; Farrilly & Co. v. The City of Cincinnati, 2 Dis., 515; City of Zanesville v. Fannan, 53 Ohio St., 614, 619; Brannan v. Hotel Co., 39 Ohio St., 333; Herrick et al. v. The City of Cleveland, 7 C. C., 470, 478, 482; See also Elliott on Roads, 524 & 525; Jones on Easements, sec. 551, 546, 543; Brown v. Manning et al, 6 Ohio St., 298; Le Clercq et al. v. Trustees of Gallipolis, 7 Ohio, 217; 91 Indiana, 64; 47 Me., 161; 26 Minn., 10; 69 Pa. St., 59; 106 Ind., 302; 35 Minn., 423; 28 Kans., 726.

Reliance is placed by the defendant on an ordinance of Columbus passed August 17th, 1857. (Ordinances of 1882, p. 168)

which makes it a penal offense for any person to drive or back any horse, or any wagon etc. over or upon any sidewalk or suffer the same to stand thereon unless it be to cross the same for the purpose of entering some lot or yard, or for the purpose of approaching some building, lot or yard, to deposit therein, or remove therefrom, wood. coal or other material, at the request of the owner or occupant of such building, lot or yard. (This ordinance was repealed February 12, 1894. Ordinances of 1896, page 169.) This ordinance was in force when the defendant purchased its lot and erected its building thereon, and it is now insisted on behalf of the defendant that this ordinance, under the circumstances, operates to estop the city and the public from disturbing defendant's rights as conferred by said ordinance. This claim is not well founded. The ordinance made certain acts punishable by a fine of from one dollar to ten dollars. The acts made penal by the ordinance are described and distinguished by the ordinance from other acts which are not made penal by the ordinance. The ordinance does not undertake, or attempt, to confer any right or privilege upon anyone, or upon any class of persons.

In Elster v. Springfield, 49 Ohio St., 82, Spear, Judge, said: "There is no power in the municipality to make a valid grant prejudicial to the interests of the public" (p. 88.)". The municipality is given the exclusive supervision and control of the streets. Hand in hand with this power goes a corresponding duty to keep them open and in repair and free from nuisance. This implies a duty to see that the right of the public therein is not encroached upon. An encroachment which would prevent the reasonable use of the street by the umnicipality would be a nuisance, and power to validate such nuisance by a grant would be utterly inconsistent with the duty enjoined to keep the street free from nuisance" (p. 97.) And in that case it was held that the city did not have power by grant, to give plaintiff any right in the street inconsistent with the future legitimate uses of the street by the city. And that no right by prescription to maintan pipes in the street would vest in the plaintiff although he had enjoyed the use more than twenty-one years (page 83.) Heddleston, Sup. v. Hendricks, 52 Ohio St., 460, 467.

In the case at bar the defendant has been careful not to obstruct the sidewalk for any greater period of time than was required to load and unload wagons; and it has used the sidewalk in the honest belief that it had the lawful right to so use it. It has no practical means of getting goods in and out of its building except over and across the sidewalk, either on Chestnut street or Front street. But these considerations do not warrant an unlawful use of the sidewalk. And the manner in which the defendant transacts its business is an inducement to others who thus use the sidewalk to use it in like manner as the defendant, at the defendant's platform, and for which use the defendant must be held responsible.

The conclusion reached is that the plaintiff is entitled to a permanent injunction, and it is therefore ordered and adjudged that the defendant, its agents, servants and employes refrain from unnecessarily or unreasonably obstructing the sidewalk on the north side of Chestnut street in front of the defendant's said premises, being the sidewalk between defendant's premises and the roadway of said Chestnut street, by wagons and horses, or other like obstructions across, or upon the said sidewalk, and reaching from the defendant's said premises, or from its said platform in front of the same, to the roadway of said Chestnut street, or from unnecessarily or unreasonably hindering or preventing the plaintiff or their employes, servants, customers and tenants from having the convenient use of and passage along the said sidewalk of said Chestnut street by any like obstruction; and it is further adjudged that the plaintiff recover its costs herein expended taxed at $—— from the defendant.