Per Curiam.
Monroe street, in the village of Bellevue,has a northwesterly and southeasterly direction through the village and by the premises of the plaintiff. Railrdad street- runs north and south through the village, passing the premises of the plaintiff on the west, and intersecting Monroe street at the point where said premises are situated. Harrison street extends east arid west through the village,intersecting, Raili road street at the point where plaintiff’s premises are situated (passing on the north side thereof) and intersecting Monroe street a short distance west of Railroad street, the angle of the intersection being such as to cause thereat, a thoroughfare somewhat broader than either street at all points, and nearly as broad as both streets at the point where the defendant company’s transfer track, hereinafter mentioned, crosses the same.
Plaintiff’s premises consist of three angular shaped lots, all comprising les3 than an acre of laud, namely, lots 126, 120 and 121,and the buildings thereon. The west front of lot 126 abuts upon Railroad street, and the northerly front upon Monroe street. The west front of lot 120 abuts upon Railroad street, the north front of lots 120 and 121 upon Harrison street,and the southerly front upon Monroe street. Lotl21 joins lot 120 on the east. A grist mill, erected before plaintiff became the owner of the property, stands upon lot 126, and upon the other lots are situated certain cooper shops and structures appurtenant to said mill, the whole forming what is designated by the parties as the “Mill Plant” of the plaintiff.
Two main tracks of the M. S. & L. S. R. R. and one side track run east and west immediately south of said mill, the side track running very close to the mill,so that grain,flour, and other produce is conveniently transferred from the cars to the mill, and from the mill to the cars. All these tracks cross Monroe street a few feet south of the mill. -
*3 . The main tracks of the N. Y., C. & St. L. R. R. and of the C.jS.&H. R. R. run north and south in Railroad street, immediately to the west of said mill. Railroad, street just north of Harrison street, is filled with the main and side tracks of the two railroads last mentioned to an .extent that materially reduces the width thereof accessible for travel thereon for vehicles drawn by horses.
The main track of the defendant company crosses Monroe street and Railroad street in an easterly course from 250 to 300 feet north and northwesterly from plaintiff's mill, crossing Monroe at its intersection with Harrison, and running then west in Harrison.
Immediately south of said mill are two transfer tracks connecting the tracks of the C., S. & H. R. R. and the N. Y., C. & St. L. R. R. with the L. S. & M. S. R. R., said transfer tracks curving to the north and east passing within about one hundred feet of plaintiff’s mill, and crossing Monroe street just east of said mill.
■ A track used to transfer cars from the track of the N.Y., C. & St, h. R R., starting from a point in Railroad street immediately west of plaintiff’s mill, and curving to the north and east through and across lots 120 and 121, and joining the main track of defendant company just north and east of lot 121, was in operation when plaintiff became the owner of said mill and premises, and before this suit was commenced, but was taken up by defendant at plaintiff’s request, shortly before defendant built the first track hereinafter described.
This gives the situation and condition of the mill and the premises in the vicinity at the time defendant built the additional tracks', on account of the building and using of which plaintiff complains, and the situation remaining the same with the exception of such additional tracks to the time of the commencement of this suit, and all but one or two of said tracks were so located and in use when plaintiff became the owner of saidjmill property.
*4 ' In the nse of these tracks many trains of cars drawn by locomotives passed along upon them daily; besides there was much running and switchiung of cars done thereon in the vicinity of said mill, with the usual incidents of smoke, cinders, noise, danger of fire, and dangers and inconveniences to those using said streets for travel or hauling in vehicles drawn by horses,or incident to allowing horses to stand in the vicinity of said mill while wagons to which they may have been hitched were being loaded or unloaded, or for any proper purpose.
In August, 1889, the defendant constructed a transfer track, leaving the north side of its main track at a point west of plaintiff’s mill, curving to the northeast, crossing Monroe street about three hundred and thirty feet northwest of said mill, and connecting with the track of the N. Y., C. & St. L. R. R. in Railroad street. In October, 1898, the defendant constructed two additional transfer tracks, which have the same general direction and course as the transfer track last mentioned, but on either side and within ten feet thereof. No part of plaintiff’s premises abuts upon Monroe street at the point where defendants’ said transfer tracks cross said street, said lot on which the said mill is located being at the nearest point at least three hundred feet from the nearest of said tracks.
Upon the trial the plaintiff offered evidence tending to prove that said transfer tracks were constructed on a grade about five feet higher than that of Monroe street, as it then existed, at the point where said tracks crossed said street; and that the approaches thereto were so steep as to make it difficult to pass over said track with loaded wagons: but it appears from the evidence that not long thereafter the grade of said street was raised so as to obviate that difficulty, at least in a large degree. The plaintiff also claims that the railroad company in its operation of these tracks sometimes allowed cars to stand across a part of the street so as to *5 narrow the passageway sometimes down to fourteen, sixteen, or twenty feet.
The plaintiff claims that he purchased this property for use as a mill, and ever since its purchase has been using it for grinding different kinds of grain and buying the same and selling the product, and that a large part of his supplies are brought into the village of Bellevue from the west and northwest, and in order to reach the mill, the most convenient way was Monroe street, and if farmers or those drawing grain came in from the west or north, they would go along Monroe street, crossing these transfer tracks before reaching his mill. Plaintiff claims that the street was obstructed with these tracks; that those tracks were used to transfer cars and run engines upon ;Nhat there was considerable noise from the operation of trains on these tracks — and from all these causes traffic to and from his mill has fallen off and gone elsewhere: that the result has been that his property has depreciated one-half in value; and he offered considerable evidence tending to show£all the above facts, and some evidence tending to show that there had been a depecrjt tion in the value of his property because his business had fallen off, and that his business was dependent on this traffic from the north and west of the village. There was a claim that there was some smoke from engines operating on these tracks; it is doubtful whether that amounts to very much in the condition of thejrecord as presented.
Numerous objections to the testimony occur all over the record which, we think,may be disposed of¡by determination of the question, whether the plaintiff is entitled to recover for the diminution in the value of his property occasioned by the fact that the traffic of his mill has been prevented or is changed from his mill to other markets,' because of the inconvenience of crossing these tracks, and liability of horses to become frightened, and the dangers incident to traveling upon a railroad track,or crossng one
*6 It is claimed that all this evidence was competent, because, under the provisions of the statute, sec. 3283, every company which lays a track upon any street,shall be responsible for injuries done thereby to private or public property lying upon or near to such ground; and if not entitled to recover under the statute, then upon the general principles of common law. It will be noticed that this statute relates to damages recoverable against a railroad company that has laid its track in a public street or other public ground by or under an agreement-with the authority having control of the street; or in case of inability to agree, that the railroad company has appropriated the right to lay its track in such street. It has been intimated in argument that plaintiff would not come within the provisions of this statute, because no such agreement or appropriation has been shown in this case authorizing the railroad company to lay these tracks. We think from the condition of the record in this case, there being an entire absence of proof offered by either party to show any agreement, that it may be assumed that the railroad company laid these tracks in pursuance of such an agreement, either expressed or implied; and we think,if the plaintiff suffered the injuries complained of as a direct result of the construction of these tracks, and that íhe same are different in kind or character from those sustained or suffered by the general public — that the plaintiff would come within the provisions of this statute; and we are further inclined to hold that the phrase in the statute,"near to,” as applicable to the plaintiff in this case, would authorize a recovery for certain injuries sustained by the construction of a railroad track across or in a public street, even though the property alleged to be injured does not abut upon the street at the place where the track is built along or across it.
Prior to the passage of this statute in its present form, a number of cases were decided in Ohio sustaining *7 the right of a private owner to recover damages for changes in the established grade of a public street by a municipal corporation in front of an improved lot or property. The most important of these are the cases of Crawford v. Delaware, 7 Ohio St., 459, Railway v. Cummingsville, 14 Ohio St., 523,and later the case of Railway Co. v. Lawrence, 38 Ohio St., 41; and in the case of the Eagle White Lead Co. v. Cincinnati, 1 Cin. S. C. 154, it is decided that the city is not liable for changing the grade of a street at a point near to, but not abutting the property of the plaintiff, and to the same effect is the doctrine laid down in the case of Jackson v. Jackson, 16 Ohio St., 163. It Í3 claimed in argument that the rule established by these'latter cases has been changed by the case of Railway v. Gardner, 45 Ohio St., 309,, and in that connection we are also cited to the case of Shepherd v. B. & O. R. R. Co., 130 U. S. 426, Grafton v. B. & O. R. R, 21 Fed. Rep., 309.
We have carefully examined all these cases as well as all others cited and a great many not cited by counsel for either party. There is considerable conflict in the authorities outside of the state of Ohio, but among Ohio cases none that may notbe reconciled. It ought to be said here that we are referred to the case of Fliehman v. C., C., C. & St. L. Ry. Co., 27 Weekly Law Bulletin 302,and C.,C., C. & St. L. v. Reeder, 6 C.C. Rep.,354. The case in the Bulletin was decided by the Superior Court of Cincinnati, and the opinion of the learned judge reviews at considerable length all the principal cases in Ohio as well as some elsewhere upon this question. Espcially does he refer to the case in 130 U. S. supra. In the 45 Ohio St. the only thing decided is that in an action by an owner of property abutting on a public street occupied by a railroad track, and which action is brought un *8 der sec. 3283 for injury to property by the laying of the track, that it is competent to take into consideration evidence of substantial injury and loss of property (not common to the community at large), caused by smoke, noise, and sparks of fire occasioned by running locomotives and cars along the track in front of the property, but that cannot well decide such a case as we have here, and perhaps it)has little, if any, bearing upon this question. The case referred to in the 27 Bulletin is one almost exactly like this. In' that the court held that the owner could not maintain an action for damages to his property or land resulting from an occupancy of the street where such injury was caused,by inconveniences which were common to the public at large, and which did not directly affect property abutting upon the street at the place occupied by the railroad track. To the same effect is the holding in the 6th C. C. 354. It is said the case in the 130 U. S. is one similar to this, but an examination of it discloses that the facts were very different, and the holding of the court in that case is to the effect that the construction of the railroad track at the point and place where so constructed was a direct obstruction to the access of the plaintiff to his property from the street, although plaintiff’s property in this case did not abut directly upon the street at the point where the railroad track was constructed, but was 25 feet away. Now, we think a careful examinaiton of these authorities will show that the plaintiff in the case before us as not entitled to recover the depreciation in the value of his property occasioned by the interference with the public travel on Monroe street, and which he claimed caused the public or his customers to cease coming to his ' mill with their products. The cessation in this business or impairment of it may have accrued from many reasons not disclosed; but assuming that his customers sought another market because of the inconvenience in crossing this railroad track or because they *9 feared their teams might become frightened and the teams or themselves injured from locomotives and cars running on these tracks, or beeause there was so much smoke or noise as to render the street at that .point, unpleasant to them, we think that plaintiff cannot require the railroad company to make up to him what he has lost through these causes; for while it may be true he has lost more than any other, it is equally true that any person who has been inconvenienced by these tracks or been compelled to seek another and a less valuable market for his product because of the inconvenience of this travel or its discomforts, would also have the same cause of complaint against the company based upon the same ground as the plaintiff, though it may be for a less amount, and hence the plaintiff’s damages so sustained are of the same kind as those sustained by the community in general, although greater in amount. We think it clear from these authorities which we have cited, and many others that might be, that the plaintiff cannot recover in such case for damages so caused. In addition to the authorities referred to, the following cases might be cited, bearing upon this question sustaining our conclusion: Davis v. County Commissioners, 153 Mass., 218; Morgan v. D. M. & L. Ry., 64 Iowa, 589; Penna Co. for Ins. v. R. R, 151 Penn. State, 334; 9 vol. Am. & Eng. Enc. Law, p. 414,and authorities there citred.
There will be found a distinction between inconveniences that may arise from a partial obstruction in the street, and those arising from a complete obstruction of a public street. In some of the cases it is held where there is a complete abandonment of one end of a street requiring the plaintiff to go in another direction to get out from his property, he has a right of action. A case in 25 Mo. App., 527, is of that kind, and it is also held that if the obstruction cuts off a means of public access to his lot or property, the owner may have an action for damages, although such obstruction is not *10 in front of the lot. Wilder v. DeCou, 26 Minn., 10.
J. H. Tyler and Jessie Vickery, Attorneys for Plaintiff in Error.
6r. T. Stewart and Andrews Bros., Attorneys for Defendant in Error.
It follows, then, that the court erred in the admission of all evidence admitted in the case to show the depreciation in the value of this property occasioned by the loss of custom and the interference to public travel on Monroe street by the creation or the operation of these railroads across it, and equally that the court erred in its general charge to the jury, especially because the court has placed the case before the jury upon the theory that these obstructions at that point were an obstruction to the access of the plaintiff to his premises from the public street; and the court likewise erred in its refusal to give certain requests asked by the defendant below, especially requests Ncs. 1, 4, 6, and 7. By this we do not mean to hold that the plaintiff may not have sustained damage by reason of the smoke, cinders, fire, or noise coming from the operation of these tracks upon this street, provided it may be shown somewhat approximately the amount of such damage directly attributable t© the defendant and its operation of these tracks, and its cars thereon in crossing the street, and as distinguished from like inconveniences and nuisances occasioned by the numerous other railroad tracks at the other places where they are located in and about his mill.
We find no other errors in the record, and reverse the judgment on the grounds stated.