CHARLES D. VIEBAHN and Another v. BOARD OF COUNTY COMMISSIONERS OF CROW WING COUNTY.[1]

November 24, 1905.

Nos. 14,442—(82).

**Public Nuisance.**

   A private action may be maintained to redress injuries caused by a public nuisance, where the complaining party has thereby suffered some special damage not common to the general public, but in such cases only.

**Right of Action.**

   A common nuisance in a public highway or navigable stream of water, which obstructs, interrupts, or prevents the continuance of a lawful business occupation existing and being conducted at the time of and before the creation of the nuisance, may be proceeded against by private action by the person who is thus interfered with in his vested rights.

**Special Injury.**

   Plaintiffs had an established business and were engaged in operating a line of steamboats on the Mississippi river, a navigable stream, carrying passengers and freight for hire, and towing small craft from point to point on the river. Defendant wrongfully and without authority of law constructed, and insists on the right to maintain, a bridge over the river, thereby obstructing and preventing plaintiffs from continuing in their said business; the bridge being so constructed as to prevent the passage of boats of the size of those operated by plaintiffs. It is *held* that the bridge constitutes a public nuisance, but that plaintiffs suffered an injury not

[1] Reported in 104 N. W. 1089.

common to the public at large, and may maintain an action for such damage as they suffered in consequence of the erection and maintenance of the bridge.

**Liability of County.**

> The bridge complained of was constructed by the board of county commissioners of Crow Wing county without authority of law, in violation of an act of Congress prohibiting such structures over navigable streams, and without express authority from the county; but it is *held*, following Schussler v. Board of Co. Commrs. of Hennepin County, 67 Minn. 412, that the county, as an organized subdivision of the state, not having repudiated the ultra vires acts of its commissioners, is liable for damages caused thereby to the same extent as though originally authorized by it.

Action in the district court for Crow Wing county by plaintiffs, owners of a line of steamboats operating upon a navigable river, to abate a public nuisance consisting of a closed bridge unlawfully erected by defendant across the stream. From an order, Spooner, J., sustaining a general demurrer to the complaint, plaintiffs appealed. Reversed.

*J. N. True,* for appellants.

*A. D. Polk,* for respondent.

BROWN, J.

Appeal from order sustaining defendant's general demurrer to plaintiffs' complaint. The complaint alleges the following facts: Plaintiffs are copartners, doing business under the name of the Mississippi Transportation Company, and own and operate a line of steamboats plying between Grand Rapids and Brainerd on the Mississippi river, carrying for hire passengers and freight and towing other craft from point to point. That since 1900 their business as such has been extensive, remunerative, and prosperous. That they own and operate, in connection with their line of steamboats, warehouses at points along the river between Brainerd and Grand Rapids, their home port being at the village of Aitkin, and the value of property invested in their said enterprise amounts to the sum of $20,000. That in the spring of the year 1904, defendant, by and through its board of county commissioners, unlawfully, wilfully, and negligently constructed and erected, and has ever since maintained, an immovable bridge over and across said river at a point other than a town or village or landing place for boats, thereby effectually obstructing navigation upon the river and prevent-

ing plaintiffs from continuing their said business. That by reason of the construction and maintenance of said bridge the business of plaintiffs has been greatly depreciated and damaged. The facts are stated in the complaint in greater detail than here disclosed, but the foregoing is sufficient to present plaintiffs' grievance.

Two questions are involved on this appeal: (1) Whether the county as such is liable for the wrongful and unlawful acts of its commissioners in constructing and maintaining the bridge in question; and (2) whether plaintiffs have suffered any damage or injury not common to the public generally, sufficient to give rise to a cause of action in their favor.

The case was presented orally upon the sole question whether the facts stated in the complaint disclosed a special or peculiar damage to plaintiffs not common to the public, and the question whether the county, as an organized subdivision of the state, was liable for the alleged wrongful and unlawful acts of its board of county commissioners, was not referred to. Counsel for defendant evidently firmly believed that there could be no recovery in any event, and did not, therefore, raise this point. It occurred to the court that the question was at the threshold of the case, necessary to be determined, and additional briefs thereon were ordered. We adopted this course rather than take up the question and determine it without opportunity of counsel to be heard.

1. It appears from the allegations of the complaint that the acts of the board of county commissioners in constructing this bridge were not only beyond the power and authority of the county, but in express violation of sections 9, 10, and 11 of the act of Congress of March 3, 1899, 30 St. 1151, c. 425 [U. S. Comp. St. 1901, 3540, 3541] which prohibits the construction of any bridge or structure which will obstruct the navigation of public waters. It is elementary that a municipality is not liable for the torts of its officers committed outside the scope of their authority. The general rule is correctly stated by Judge Elliott, in his work on Municipal Corporations, as follows: "A municipal corporation is liable for the acts of its agents, injurious to others, when the act is in its nature lawful and authorized, but is done in an unlawful manner or in an unauthorized place, but it is not liable for injuries or tortious acts which are in their nature unlawful and prohibited."

Elliott, Mun. Corp. § 302. If we were to follow that rule, which is supported by an unbroken line of authorities, the conclusion would necessarily be that the defendant county is not liable in this case, because the acts of the commissioners in constructing the bridge were not only not within the power and authority of the county, but expressly prohibited by law, and therefore wrongful and unlawful.

But it is urged by counsel for plaintiffs that, conceding the general rule of nonliability in such cases, defendant county in the case at bar, by not repudiating the acts of its officers, adopted the same as its own and is liable on the doctrine of ratification. Schussler v. Board of Co. Commrs. of Hennepin County, 67 Minn. 412, 70 N. W. 6, is cited in support of this contention.

The law is well settled that a municipal corporation, not being liable for the ultra vires acts of its officers, cannot make itself liable by ratification, except where it had power in the first instance, or at the time of the ratification, to authorize the acts. But in the case cited the court apparently applied the doctrine of ratification to the facts in that case, although it was clear that the county could not have authorized the acts there complained of. Without stopping to inquire whether that decision is at variance with the authorities, we adopt it as the law of this state in such cases, apply it to the case at bar, and hold that, inasmuch as defendant county did not, when the action was brought against it, repudiate the acts of its commissioners, and by its conduct insists on the right to maintain the bridge, it is liable to the same extent as though it originally authorized the acts and had power to do so. In that action the county, instead of pleading in its answer the want of authority of its officers to do the acts there complained of, asserted the lawfulness thereof, thereby adopting and approving their conduct. In the case at bar there was no repudiation of the unlawful acts of the commissioners, and by demurring to the complaint the county is in substantially the same position as the county was in the Schussler case.

2. The next question presents some difficulties, but after a careful examination of the authorities bearing upon the subject we conclude that the plaintiffs have suffered, as disclosed by the allegations of the complaint, an injury not suffered by the general public, and are entitled to recover. Plaintiffs had an established business and were engaged

in operating a line of steamboats on the Mississippi river, and were obstructed and hindered in the continuance of the same by the wrongful and unlawful acts of the defendant in the erection of the bridge. The bridge obstructs navigation in general, in so far as steamboats of the size and character of those operated by plaintiffs are concerned, and necessarily damages and injures persons engaged in operating them. It amounts to a public nuisance, and the question presented is whether plaintiffs may maintain a private action for damages for its wrongful construction and maintenance. The authorities are by no means harmonious on this subject, in so far at least as the application of pertinent elementary principles to particular facts is concerned, and much confusion exists in the adjudicated cases. The general rule, upon which there is no conflict, is that a private action may be maintained to redress an injury of this character where the plaintiff has suffered some special or peculiar damage not common to the general public, and in such cases only.

What constitutes special or peculiar injury sufficient to sustain such an action is not always easy of determination. As said in Kaje v. Chicago, St. P., M. & O. Ry. Co., 57 Minn. 422, 59 N. W. 493: "No general rule for determining it has been laid down which can readily be applied to every case. Where to draw the line between cases where the injury is more general or more equally distributed and cases where it is not, where by reason of local situation the damage is comparatively much greater to the special few, is often a difficult task. In spite of all the refinements and distinctions which have been made, it is often a mere matter of degree, and the courts have to draw the line between the more immediate obstruction or peculiar interference, which is a ground for special damage, and the more remote obstruction or interference, which is not." That the facts disclosed in the case at bar show that plaintiffs were peculiarly injured and damaged, distinct from the general public, seems to us quite clear. We take judicial notice of the fact that the Mississippi river between the points named in the complaint is a navigable stream, and consequently a public highway, with reference to which the general rules and principles of law governing the use and obstruction of highways apply.

Numerous cases involving the right of private action to redress wrongs caused by public nuisances are reported in the books, and as

already observed there is much diversity of opinion in the decisions. A reference to a few pertinent cases in this court will disclose the rule applied in this state. In Aldrich v. Wetmore, 52 Minn. 164, 53 N. W. 1072, the court held that to entitle a party to maintain a private action for obstructing a public street it was not necessary for him to show that he was cut off from all access to his property, and that it was the nature of the right affected and not the number who suffered from the unlawful obstruction in a street which determines whether such an action will lie. In that case it appeared that the plaintiff carried on the business of a barber on the ground floor at No. 105 Second Street South, Minneapolis, living with his family in the second story of his building; that defendant owned a lot adjoining the property so occupied by him, and at the time complained of defendant took up the sidewalk in front of his lot and excavated a cellar thereunder and under the sidewalk, depositing the earth on the street in front of both his and plaintiff's property, whereby the sidewalk and street were obstructed and travel prevented. The court held, after reviewing many of the authorities, that, though the obstruction caused by the defendant amounted to a public nuisance, plaintiff had a right of private action against him for damages. The case of Wilder v. De Cou, 26 Minn. 10, 1 N. W. 48, was somewhat similar, and it was there held that the owner of a town lot suffers damage peculiar to himself by the obstruction of a portion of a public street immediately in front of his premises, and that he could maintain an action to remove or prevent the same, although it amounted to a public nuisance. The peculiar injury to plaintiff in that case was the interference with the free use of his private property, an injury not suffered by the general public.

A rule apparently in conflict with that made the basis of those decisions was laid down in Swanson v. Mississippi & R. R. Boom Co., 42 Minn. 532, 44 N. W. 986. It appeared in that case that plaintiff was a riparian owner of a tract of land on the Mississippi river which he used for the purpose of piling wood to be conveyed by river to a brickyard operated by him farther down the stream. The defendant, a corporation created under the laws of the state and engaged in booming and driving logs down the river, had wrongfully and unlawfully interfered with and obstructed the channel of the river, by driving piles therein, fastening booms thereto, and detaining large quanti-

ties of logs, thus preventing the navigation of the river between the two tracts of land owned by plaintiff. The court in that case correctly stated the general rule that the right to use a navigable river is a public one, and the owner of land on the stream cannot maintain an action for an illegal obstruction thereof, unless he shows a special and peculiar damage to himself, but held that the facts of that case did not show a special injury to plaintiff different in kind from that suffered by the public in general and he could not recover. The correctness of that decision as respects the application of the facts to the conceded general rule of law was, however, doubted in the later case of Aldrich v. Wetmore, supra.

In the case of Page v. Mille Lacs Lumber Co., 53 Minn. 492, 55 N. W. 608, 1119, it appeared that plaintiffs were partners in the lumbering business at Anoka, near the mouth of the Rum river, and that the defendant was engaged in the business of logging and manufacturing lumber at Milaca, on the same river, about seventy miles above Anoka. In furtherance of its business defendant built a sawmill at Milaca on the east bank of the river, and on the opposite side constructed a low dam, and placed in the river various structures in the interest of its business, which obstructed navigation of the river, and which hindered and prevented plaintiffs' free use of the same. Plaintiffs brought the action to recover damages therefor. The court held, reviewing the prior decisions of the court, that the action could be maintained, notwithstanding the fact that the obstruction amounted to a public nuisance; that the hindrance to the conduct of plaintiffs' business and their right to drive logs down the river constituted a special and peculiar damage to them different in kind from the injury to the general public, and such as to authorize the action. The correctness of the decision in the Swanson case was there again doubted, and it may be said that that case has been practically overruled. The court cited in support of its decision the following cases: Powers v. Irish, 23 Mich. 429; Watts v. Tittabawassee, 52 Mich. 203, 17 N. W. 809; Gifford v. McArthur, 55 Mich. 535, 22 N. W. 28; Enos v. Hamilton, 24 Wis. 658; Clark v. Peckham, 10 R. I. 35; Blanchard v. Western Union, 60 N. Y. 510; Hughes v. Heiser, 1 Binney, 463; Weise v. Smith, 3 Ore. 445; Lancey v. Clifford, 54 Me. 487; Dudley v. Kennedy, 63 Me. 465; McPheters v. Moose River, 78 Me. 329, 5 Atl. 270; Frink v. Lawrence, 20 Conn. 117;

Brakken v. Minneapolis & St. L. Ry. Co., 29 Minn. 41, 11 N. W. 124; Brown v. Watson, 47 Me. 161. While the order granting a new trial in the Page case was subsequently set aside for some defect in the return to this court, the decision on the merits has been accepted as, and is now understood to be, the law of this state.

See also Crookston Waterworks, P. & L. Co. v. Sprague, 91 Minn. 461, 98 N. W. 347, 99 N. W. 420, for an interesting discussion of the relative rights and duties of persons using navigable streams of water, and Jaggard on Torts, where many of the authorities are collected and referred to. 2 Jaggard, Torts, 784, et seq.

The trend of decisions of other courts is in harmony with our application of the rule. It is so applied in the English courts.

Rose v. Miles, 4 Maule & S. 101, was an action to recover damages from defendant for wrongfully mooring and fastening a certain barge across a public and navigable stream and the channel thereof for a long space of time, and up to the commencement of the action. The plaintiffs declared that before and at the time of the obstruction they were lawfully possessed of certain barges and other craft laden with goods, wares, and merchandise, and that by said obstruction plaintiffs were prevented from navigating the stream. There was a verdict for plaintiff. The errors assigned on appeal were that the alleged obstructions were in the nature of a common nuisance to all the subjects of the realm, and not of a particular or private injury to plaintiffs. Lord Ellenborough, C. J., said: "In Hubert v. Groves the damage might be said to be common to all; but this is something different, for the plaintiff was in the occupation, if I may say so, of the navigation. He has commenced his course upon it, and was in the act of using it when he is obstructed. It did not rest merely in contemplation. Surely this goes one step farther. This is something substantially more injurious to this person than to the public at large, who might only have it in contemplation to use it. And he has been impeded in his progress by the defendants wrongfully mooring their barge across, and has been compelled to unload and to carry his goods over land, by which he has incurred expense and that expense caused by the act of the defendants. If a man's time or his money are of any value, it seems to me that this plaintiff has shown a particular damage."

In Greasly v. Codling, 2 Bing. 263, the plaintiff's action was for dam-

ages for shutting and keeping shut a gate across a public highway. It appeared that the plaintiff was in the habit of passing up and down the road in the pursuit of a business calling, and that upon the day in question he was hindered therein by obstructions placed in the highway by defendant. Best, C. J., in disposing of the case, said: "But can he maintain an action for this obstruction? It has been contended that he cannot, unless he proves a special damage; but even in a case of public nuisance, if any one has been distinguished in injury, he may sue the offender, and the many old cases which have been cited do not apply, because in those cases no special damage was alleged, whereas in the present it has been distinctly stated." Burroughs, J., in the same case, said: "The question in all these cases is whether the inconvenience complained of is general, or a particular inconvenience of the party complaining. That is the point of the decisions, and who can doubt about the particular injury in the present case? A man traveling with asses is stopped and obliged to go by a circuitous course, with an obvious loss of time and profit. What distinction is there in principle between such a case and that of a man who is carrying £10,000 worth of goods to arrive by a given day, and is deprived of his market by an individual obstructing the road." See also Brownlow v. Metropolitan, 111 E. C. L. 546; White v. Phillips, 109 E. C. L. 245.

A similar application of the rule is made upon facts substantially like those in the case at bar in most of our sister jurisdictions.

In Brown v. Watson, 47 Me. 161, it appeared that the plaintiff, having been from home, was returning with a loaded team over the way in question, and found the road wholly obstructed by logs and trees felled across it by defendant, and which the plaintiff could not remove, in consequence of which he was compelled to turn back and return by a more circuitous route. Appleton, J., delivering the opinion of the court, said: "The law is well settled that no person can maintain an action for a common nuisance unless he has suffered therefrom some special and peculiar damages other and greater than those sustained by the public generally. Those who have no occasion of business or pleasure to pass over a road thus obstructed, and who have not attempted it, cannot maintain an action for the obstruction thereon. The case of the plaintiff is different. He was returning home with a loaded team, as well he might upon a legal highway, till on his way he was stopped by the obstructions of the defendant, and compelled with his team to

proceed by a more circuitous route to his place of destination. The trouble and loss of time thus arising may not be great, but that affords no reason why the defendant, who wilfully caused them, should not recompense him therefor."

Little Rock v. Brooks, 39 Ark. 403, was an action by the plaintiffs, whose business necessitated the use of a navigable stream of water, for damages sustained from an interruption thereof by an obstruction caused by the piers of defendant's railroad bridge. Timbers of the bridge had so contracted the passage that a barge of plaintiffs loaded with staves could not pass on its way to market, and the delays thereby occasioned were such as to cause some damage to plaintiffs in their established business. Eakin, J., in disposing of the case, said: "Of the obstruction and its consequences there was no question. Although the nuisance was a public one, yet the plaintiff had suffered special injury, and might maintain the action. The verdict was neither against law nor evidence."

In Gates v. Northern Pacific, 64 Wis. 64, 24 N. W. 494, in an action for damages for obstructing a navigable stream, it was held that where, by reason of the maintenance of an obstruction in a navigable stream, a person engaged in floating logs therein was delayed in his business and compelled to do a portion of such work at increased cost, a private action might be maintained, though the obstruction amounted to a public nuisance.

In Pettit v. Town, 119 Iowa, 352, 93 N. W. 381, an action to abate a nuisance and for damages, it was held that where a city erects its public buildings in a dedicated street they may constitute a nuisance, the same as though erected by a private individual, and, though the street may cease to be used for public travel, that fact cannot be made the basis of a claim of right on which to found the defense of abandonment in an action by the abutting owner of property for damages and abatement of the nuisance.

In Reyburn v. Sawyer, 135 N. C. 328, 47 S. E. 761, an action to restrain the defendant by injunction from maintaining a nuisance, it appeared that the plaintiff was the owner of a tract of land situated in the midst of navigable waters, and that it was necessary to the full and free enjoyment of his property and his egress from it that obstructions be not placed in the channels of approach. The nuisance complained of was the driving of stakes in the channel of the stream and

attaching fish nets thereto, which prevented plaintiff from the free use and enjoyment of his property. It was held that he might maintain an action to restrain and enjoin the nuisance; that he suffered an injury different from that suffered by the general public; and the rule already adverted to was applied.

In Mehrhof v. Delaware, 51 N. J. L. 56, 16 Atl. 12, plaintiff operated a brickyard on the bank of the Hackensack river, and brought his action against the defendants for unlawfully obstructing the same, whereby the boats of the plaintiffs used in the transportation of their bricks to market were prevented for a long period of time from passing down the river, during which time the plaintiffs were put to considerable expense, together with the loss of the sale of a large quantity of their bricks. Garrison, J., said: "It is unquestionably the general rule that a private action does not lie for a public injury. But it also is a firmly established doctrine that he who suffers from a common nuisance some special injury different from that sustained by the rest of the public shall have his remedy therefor. There has been, it is true, some vacillation in judicial opinion as to what injuries were special within the meaning of this rule. * * * In the case before us the plaintiffs clearly bring themselves within this rule * * * by the allegation of loss of the use of their boats, which were shut off from the channels of trade, their expense in victualing them, and the loss of trade and profit." That case comes squarely within the facts of the case at bar. Here the plaintiffs were prevented from carrying on an established business which the public generally was not engaged in.

Dudley v. Kennedy, 63 Me. 465, was an action by plaintiff for damages caused by the act of defendant in closing the navigation of the Kennebec river. The plaintiff had contracted to carry sand and ballast by boats down the river, but was prevented from doing so by the erection of a boom by the defendant between the place whence the material was to be taken and that to which it was to be transported; and it was held that he could maintain an action, and that the facts stated caused to him an injury not common to the public.

In Farmers v. Albemarle, 117 N. C. 579, 23 S. E. 43, it appeared that defendant, by the construction of a bridge over a navigable river, obstructed the passage of plaintiff's boat thereon, to the detriment of its business of transporting freight from point to point thereon; and

it was held that, while the damages recoverable in a civil action founded upon the obstruction of a public highway must be special, and such as are not common to every one who actually does or may travel thereon, yet the wrong may be to a number or class of persons, and each may have a right of action for redress, and, further, that the construction of a bridge across a navigable stream without any draw therein to permit the passage of boats will render the wrongdoer liable for special damage to a boat owner whose business, in common with other boat owners, requires the transportation of material for manufacturing purposes from a point below to a point above the obstruction.

Milarkey v. Foster, 6 Ore. 378, was an action for damages for the obstruction of a public highway; and it was held that a complaint which showed that the plaintiff had occasion to travel over the same with teams and loaded wagons, in order to deliver freight in different localities, and did actually attempt to do so, but was prevented and delayed for a period of five days by means of an unlawful obstruction placed in the road by defendant, stated a cause of action for damages for a peculiar injury not common to or sustained by the public in general.

See also Miller v. Hare, 43 W. Va. 647, 28 S. E. 722, where an extended note on this subject will be found.

In the light of these authorities we have no difficulty in holding that the act of the defendant in constructing the bridge in question, obstructing and preventing, as it does, plaintiffs from carrying on their business, which was established long prior to the erection of the bridge, so distinctly affected and injured them as to give rise to a cause of action in their favor. It is true the general public have the right to navigate the Mississippi river, and that this obstruction would prevent them so doing to the same extent that it prevents the plaintiffs; but the public is not engaged in that sort of business, and the right is one in contemplation only. Plaintiffs were in fact engaged therein at the time of the construction of the bridge and have been wholly prevented from continuing therein. This is special damage and injury to them, distinct from the public, and within the authorities justifies a private action for damages, though the act complained of amounts to a public nuisance.

Order reversed.