PETER SCHUSSLER v. BOARD OF COMMISSIONERS OF HENNEPIN
COUNTY.[1]

February 9, 1897.

Nos. 10,229—(203).

**Municipal Corporation—Tort of Officer—Ratification.**

> As a general rule, a municipal corporation is not responsible for the un-
> authorized and unlawful act of its officers, though done colore officii;
> but when such corporation itself expressly authorizes such act, or, when
> done, adopts and ratifies it, and retains and enjoys its benefits, it is liable
> in damages.

Appeal by defendant from a judgment of the district court for
Hennepin county, in favor of plaintiff, entered in pursuance of the
findings and order of Elliott, J. Affirmed.

*A. H. Nunn,* Special Attorney for Hennepin County, for appel-
lant.

Lake Minnetonka is a navigable body of water. Minnehaha creek
is its outlet. It rises and falls with the waters of the lake and is
virtually a part of the lake. The world is charged with notice that
the lake is navigable, and that the waters of the creek are waters
of that lake. Those buying land upon the lake buy subject to the
right of the sovereign to control the waters absolutely within nat-
ural high-water mark, regardless of the effect upon riparian own-
ers. Likewise any person buying upon the outlet is charged with
notice of its character. Any injury to such riparian owner is an
injury of which he cannot complain. Morrill v. St. Anthony F. W.
P. Co., 26 Minn. 222, 2 N. W. 842; State v. Minneapolis Mill Co.,
26 Minn. 231, 2 N. W. 839; Page v. Mille Lacs L. Co., 53 Minn. 492,
55 N. W. 608, 1119; Lamprey v. State, 52 Minn. 181, 53 N. W. 1139;
Falls Mfg. Co. v. Oconto R. Imp. Co., 87 Wis. 134, 58 N. W. 257;
Wisconsin R. Imp. Co. v. Manson, 43 Wis. 255; People v. Canal Ap-
praisers, 73 N. Y. 443; Commonwealth v. Boston & M. R. Co., 3
Cush. 53; Treat v. Lord, 42 Me. 552; Fletcher v. Phelps, 28 Vt. 257;
Gould, Waters, § 56; South Carolina v. Georgia, 93 U. S. 9. The
complaint failed to allege that the construction of the dam was

[1] Reported in 70 N. W. 6.

authorized by law, and the court finds that act was without authority. The county, therefore, is not liable for this act of its officers. Kreger v. Bismark Tp., 59 Minn. 3, 60 N. W. 675; Weltsch v. Town of Stark, 65 Minn. 5, 67 N. W. 648; Board of Commrs. v. Ball, 22 Colo. 125, 43 Pac. 1000; Board of Commrs. of Johnson Co. v. Hemphill, 42 N. E. 760; Town of Crandon v. Forest Co., 91 Wis. 239, 64 N. W. 847.

*Young & Fish*, for respondent.

The plaintiff was entitled to the natural flow of the stream. Gould, Waters, §§ 204–209, 402; St. Anthony F. W. P. Co. v. Minneapolis, 41 Minn. 270, 43 N. W. 56; Morrill v. St. Anthony F. W. P. Co., 26 Minn. 225, 2 N. W. 842; Pinney v. Luce, 44 Minn. 369, 46 N. W. 561. When an alteration in the natural conditions governing the flow is made by public authority, the same rule applies to the altered conditions. The status thus lawfully substituted becomes, in legal contemplation, the natural status. The dredging done pursuant to Sp. Laws 1873, c. 143, must be presumed to have been authorized for the general good. If it resulted in benefit to the plaintiff's grantors, their right to such benefit became vested, because they were a part of the public and helped to pay the cost. If the volume of the water in the creek was increased to their advantage, they have an unquestionable right to retain that advantage.

A municipal corporation is liable for negligence and for other torts committed by its officers. Towns and counties are liable for the improper exercise of powers which are within the general scope of their duties, but are not liable for mere neglect or failure to perform the duties imposed by law. The reason for the distinction is that the latter are involuntary organizations created by the state for its own purposes, while the former are voluntary organizations. This ground of distinction does not rest on sound principle, but upon the weight of authority. Altnow v. Town of Sibley, 30 Minn. 186, 14 N. W. 877; Snider v. St. Paul, 51 Minn. 466, 472, 53 N. W. 763. Whether a county or town is liable for damages arising from trespass or other active wrong done by its official board colore officii is an open question. Dosdall v. County of Olmsted, 30 Minn. 96, 14 N. W. 458; Gould v. Sub-District, 7 Minn. 145 (203); Bank v. Brainard, 49 Minn. 106, 51 N. W. 814.

The answer of the county is that the dam was built and maintained lawfully. Salt Lake City v. Hollister, 118 U. S. 256, 6 Sup. Ct. 1055; Thayer v. Boston, 19 Pick. 511.

The recovery in this action may rest upon the ground that this dam is a nuisance and that a public corporation has no right to maintain it. Dillon, Mun. Corp. § 374, note; Petersburgh v. Applegarth, 28 Grat. 321; Brayton v. Fall River, 113 Mass. 218; Harper v. Milwaukee, 30 Wis. 365; Franklin Wharf Co. v. Portland, 67 Me. 46; Hannibal v. Richards, 82 Mo. 330; Wood, Nuisance, § 742.

*A. H. Nunn*, for respondent, in reply.

The cases cited by counsel in support of the proposition that the municipal corporation is liable for the affirmative acts of its officers which are ultra vires are cases against municipal corporations proper, and do not apply to quasi municipalities, such as counties or towns. Mayor, etc., of Albany v. Cunliff, 2 N. Y. 165; Browning v. Board of Commrs., 44 Ind. 11; Rowland v. Gallatin, 75 Mo. 134; Spaulding v. Lowell, 23 Pick. 71; Schumaker v. St. Louis, 3 Mo. App. 297; Cuyler v. Trustees, 12 Wend. 165; Anthony v. Inhabitants, 1 Metc. (Mass.) 284.


BUCK, J. The board of county commissioners of Hennepin county in the year 1893 erected a dam across Minnehaha creek, the natural outlet of Lake Minnetonka, and about 3½ miles below said lake, under the supposed authority of Sp. Laws 1891, c. 381, for the purpose of raising and maintaining a uniform height of water in the lake, in aid of navigation. The plaintiff at the time of the erection of the dam, and for many years prior thereto, owned a piece of land about 3½ miles below this dam, upon which he had erected and used a gristmill operated by the water of this stream; and, to this end, plaintiff had provided the necessary wheels, pond flumes, and raceway power, and, until interfered with by the defendant's erection of the dam, he was enabled to store and use the waters of this stream, by means of said pond and other facilities possessed by him, and whereby said mill was propelled and operated for his use and profit. The defendant erected said dam about five feet in height, and, ever since its erection, has maintained the same, whereby said stream has been obstructed and held back except at times when the stage of

water in Lake Minnetonka is sufficiently high to flow over said dam. The dam so erected and maintained is five inches above the natural bed of the stream, and the sole purpose of defendant in erecting the dam and obstructing the natural flow of the stream was to hold back and retain the water in Lake Minnetonka for the purpose of increasing the volume of water therein, and maintaining a uniform quantity and stage of water in aid of navigation, the lake being an inland, navigable one.

The action is one to recover damages alleged to have been sustained by plaintiff by reason of the construction and maintenance of said dam, and for an injunction restraining and enjoining the defendant from maintaining the same so as to interrupt the natural flow of the water in the stream mentioned. The trial court, among its other findings of fact, also found:

"That the plaintiff, by reason of the construction and maintenance of the dam as above stated by the defendant, and the consequent obstruction of, and interference with, the natural and customary flow of the waters of said Minnehaha creek, has been deprived of the natural use of said waters, and is thereby subject to hindrance and great inconvenience in and about the operation of his said mill, to his damage in the sum of five hundred dollars."

And as conclusions of law:

"(1) That the plaintiff is entitled to judgment herein for the abatement of said dam so erected and maintained by the defendant board, so far as said dam obstructs the natural flow of said stream. (2) For a perpetual injunction ordering and requiring defendant to lower said dam five inches from the top thereof, and for such a width as was the natural width of the original bed of said stream. (3) For the recovery of five hundred dollars as damages, and for the costs and disbursements in this action."

While the plaintiff had no property interest in the water itself, he had an interest in it as it passed along through his land as it was wont to run, and a wrongful and unlawful interference so as to materially interrupt or diminish the natural flow of the stream to plaintiff's damage would constitute a cause of action. The county attorney, representing the defendant, conceded that the acts of the board were unlawful, and that Sp. Laws 1891, c. 381, relating to the improvement of the navigation of Lake Minnetonka, and establishing and maintaining a uniform height of water in said lake, under which they assumed to act, was unconstitutional, and insisted that

such acts were ultra vires, and hence no action against the county could be maintained. Upon this concession of appellant's attorney, and certain allegations in the answer, the question to be determined is the liability of the defendant.

The stream, dam, and property in question are all situated in the county of Hennepin, and whatever was done by the county commissioners was done in pursuance of apparent legislative authority, and under a legislative act in terms conferring the power to act in the manner admitted and proven. Some of these acts were done pursuant to legislative enactments prior to the passage of Sp. Laws 1891, c. 381, but the dam in question was erected subsequent to the passage of that act, and by virtue of its apparent authority; and it is this act which appellant's counsel concedes to have been unconstitutional, and hence he asserts that, the acts of the board of county commissioners being tortious and unauthorized, the defendant is not liable in damages for whatever the members of the board may have done in the premises,—in other words, that Hennepin county had no right to build the dam in question, and therefore the county is not liable for the resultant damages. But this contention is inconsistent with defendant's defense as alleged in its answer. There it expressly affirms the doings of its official board; alleges that its acts were lawful, and that it did no more than it had a legal right to do, in the erection and maintenance of said dam. It not only fails to plead that the acts complained of were ultra vires, but it adopts, assumes, and ratifies the acts complained of, and, by its pleadings, insists that such acts were right, proper, and legal, and also insists that such acts were performed under a public necessity.

This is therefore not a mere act of negligence of the board of county commissioners in the performance of an official duty, but an active and affirmative tort, done under claim of statutory authority and duty, and justified upon such ground by defendant, and that it was performed within the scope of the board's official duty. It comes into court, and, by its pleadings and evidence, attempts to uphold the wrongs it has done by its officials, and persists in the continuance of this wrong, but, by contention of counsel, insists that it is not liable in damages, because its acts were unconstitutional, unauthorized, and void. Not only this, but it insists upon retaining the benefits of the illegal acts of its officers. It is not willing that the wrong shall cease, but aggressively insists that it will make no reparation for its

past tort, and that it has a legal right to enjoy in the future all of the benefits secured through an unconstitutional law. If valuable property rights can thus be taken, destroyed, diverted, and injured without compensation, there will be but little safety in the private ownership of property.

We may concede the general rule to be that the defendant would not be responsible for the unauthorized and unlawful acts of its officer, done colore officii; but when the defendant itself expressly authorizes such act, or, when done, adopts and ratifies it, and retains and enjoys its benefits, and persists in so doing, it is liable in damages. The law applicable to a case of this kind is well stated in the case of Thayer v. Boston, 19 Pick. 511, as follows:

"There is a large class of cases, in which the rights of both the public and of individuals may be deeply involved, in which it cannot be known at the time the act is done whether it is lawful or not. The event of a legal inquiry in a court of justice may show that it was unlawful. Still, if it was not known and understood to be unlawful at the time; if it was an act done by the officers having competent authority, either by the express vote of the city government, or by the nature of the duties and functions with which they are charged, by their offices, to act upon the general subject-matter; and especially if the act was done with an honest view to obtain for the public some lawful benefit or advantage,—reason and justice obviously require that the city, in its corporate capacity, should be liable to make good the damage sustained by an individual in consequence of the acts thus done. It would be equally injurious to the individual sustaining damage, and to the agents and persons employed by the city government, to leave the party injured no means of redress except against agents employed, and by what at the time appeared to be competent authority, to do the acts complained of, but which are proved to be unauthorized by law. * * * The court are therefore of opinion that the city of Boston may be liable in an action on the case where acts are done by its authority which would warrant a like action against an individual, * * * or where, after the act has been done, it has been ratified by the corporation, by any similar act of its officers."

We do not pass upon the constitutionality of Sp. Laws 1891, c. 381, relative to the proceeding had by the board of county commissioners, but our opinion in this respect is based upon the concession of appellant's counsel. Points raised by counsel and not discussed in this opinion have been examined and considered, but are deemed immaterial.

Judgment affirmed.