## TOWN OF LISBON v. COUNTIES OF YELLOW MEDICINE AND LAC QUI PARLE.[1]

### May 2, 1919.

### No. 21,163.

**Drain — duty of engineer — cost of bridges.**

1. It is the duty of an engineer in a drainage proceeding to prepare and file plans and specifications for all bridges to be constructed, together with a statement of the estimated cost thereof, as a basis for the assessment of damages and benefits therein.

**Same — report of engineer, when affirmed, conclusive.**

2. The report of the engineer as to the size and character of bridges in a drainage proceeding, when affirmed by the order establishing the ditch, is conclusive, and should be the foundation of the assessment of damages to the town required to construct the same.

**Same — assessment of damages — evidence inadmissible.**

3. In a trial, upon a demand for a jury to assess damages in such proceeding, it is error to admit testimony as to what kind of bridges should be constructed, the same having been provided for in the plans and specifications of the official engineer.

**Same — measure of damages to town.**

4. The damages to which a town is entitled on account of bridges provided for in public drainage proceedings, is the cost of the construction

[1]Reported in 172 N. W. 125.

and maintenance of the same, less the value of the wreckage from bridges to be replaced.

**Drain — rule inapplicable to town.**

    5. The rule requiring a railroad company to construct and maintain bridges across the channel of a public ditch has no application to a municipality having the care and maintenance of public highways.

The district court for Yellow Medicine county made an order establishing Judicial Ditch No. 2, and awarding benefits and damages. The town of Lisbon demanded a jury trial in the matter of assessments. The matter was heard before Qvale, J., and a jury which returned a verdict in favor of the town. From an order denying their motion for a new trial, the counties of Yellow Medicine and Lac qui Parle appealed. Reversed.

*O. A. Lende* and *A. W. Ewing,* for appellants.
*Oluf Gjerset,* for respondent.

QUINN, J.

This drainage system consists of about 21 miles of open and many miles of tile work. The main line is an open ditch which crosses public highways in seven places in the town of Lisbon. The bottom thereof is eight feet wide, except at the highway between sections 25 and 26, where it is ten feet. Branch 4 crosses two highways and the bottom thereof is six feet wide. The viewers allowed the town, as damages on account of these crossings, from $200 to $350 each. The town, feeling aggrieved, served a demand for a jury to determine the same. The issue so raised came on for trial in January, 1918. The jury assessed the damages at the sum of $9,099. From an order denying its motion for a new trial the county appealed.

Upon the trial demandant offered in evidence the petition, engineer's report and order establishing the ditch. Owing to a suggestion by the court that it was conceded that the ditch crossed the highways at the points in question, that demandant was entitled to damages and that the only question at issue was the amount, they were not received. G. P. Smith was then called as a witness by demandant, who testified that he was a civil engineer, and that he had checked over the plans for the ditch

with Mr. Norgaard, the official engineer who had prepared them.  He then testified without objection as to the width, depth and length of the open work, that the same crossed the highways at the points in question, and gave his opinion as to the size, length of span, character and cost of the several bridges necessary.  Under objection and exception he testified that a bridge between sections 29 and 32 should have a 16 foot span, 18 foot roadway, reinforced concrete abutments, steel beams and concrete deck and would cost $675.

Bernard Loftfield was then called as a witness by demandant who testified that he was a civil engineer; that he had never seen the plans nor specifications, but that he had heard the testimony of Mr. Smith; that he thought a 16 foot bridge would be sufficient to take care of the water on the line between sections 29 and 32, but that such ditches had to be cleaned, and that he would rather put the abutments 24 feet apart so that a dredge might pass through for such purpose.  He then testified, without objection, that in his opinion the cost of such bridges, with abutments 24 to 26 feet apart and with three inch plank floors instead of concrete, would be $10,681 in the aggregate.  He further testified that four-foot reinforced concrete culverts would, in his opinion, be sufficient to take care of the water at the several points under present conditions, that is, without any ditch being constructed; that the same would be permanent and cost not to exceed $175 to $190 each.  He also gave testimony as to the value of the present bridges and culverts.

In submitting the issue of damages to the jury, the court dwelt at some length upon the opinion evidence given by the two engineers as to the kind and size of the bridges and the cost thereof, and then left it to the jury to determine, under all the facts and circumstances, what kind of bridges ought to be constructed and to decide which engineer's bridge to adopt.  We are unable to adopt this theory, even though the trial was along these lines.  The official engineer in the drainage system, being ill, was not called as a witness, and it does not appear from the testimony what kind of bridges was provided for in the plans and specifications or the estimated cost thereof.

The statute requires the engineer to make a correct survey of the line of the ditch, drain or watercourse from its source to its outlet, and make an itemized tabulation of the construction of all bridges or other con-

struction work found necessary, together with the estimated cost thereof. G. S. 1913, § 5526. He shall also make a detailed and complete report of his doings, and submit therewith the necessary plans and specifications and a description of the land over which the ditch is surveyed. All plans, specifications, maps or profiles shall be made in duplicate and filed in the office of the clerk of the court. G. S. 1913, § 5527.

It was error to receive the testimony of the witness Smith over appellant's objection as to the cost of a bridge which he deemed necessary on the line between sections 29 and 32. The kind and size of the bridges throughout should have been, and presumably were, provided for in the plans and specifications of the engineer, which must necessarily have been confirmed in the order establishing the ditch. This being true, all of the opinion testimony given by the engineers, as to the character or dimensions of the bridges, was immaterial. Nor was it a question for the jury to determine. The plans and specifications, after being confirmed by the court in the order establishing the ditch, become final and conclusive, unless modified or changed as provided by the statute.

The difficulty here involved grows out of what seems to have been a mutual error in arriving at the benefits and damages on account of the bridges provided for. While the drainage statute is somewhat complex, yet it provides for the appointment of three disinterested resident freeholders of the county as viewers to meet and prepare a tabular statement showing, as far as practicable, the names of the owners of each tract of land to be benefited or damaged by the construction of the proposed drainage system, and when any such system drains, either in whole or in part, any public highway, or benefits the same so that the roadbed or traveled track will be made better, the viewers shall estimate the benefits arising therefrom to such highway or roadbed and report the same as a part of such tabular statement. They shall also report as a part of such tabular statement the damages awarded to each town or municipality for injury to such highway or roadbed and from the construction and maintenance of any bridges, culverts or other works rendered necessary by the establishment of such system, stating the same separately. G. S. 1913, § 5529.

In arriving at the amount of benefits which a town charged with the maintenance of a public highway should be assessed, the viewers may

consider and determine, not only what benefits will be derived from the drainage of the highway, but as well the improvement or betterment of the same by reason of the construction of the bridges provided for in the engineer's plans and specifications. If the construction of such bridges will constitute an improvement to the highway, roadbed or traveled track, or render the same more permanent, then the same should be considered a benefit to the extent of such betterment and assessed accordingly.

The damages which a town is entitled to on account of bridges in such drainage proceeding, is the cost of the construction and maintenance of the bridges provided for in the engineer's report, less the value of the wreckage from the bridges to be replaced, such cost of construction and maintenance to be determined primarily by the viewers and finally, if demanded, by a jury. We know of no rule requiring a public drainage enterprise to pay a town or other municipality for bridges which are to be replaced, as contended for in the case at bar.

When a bridge is provided for in a highway, it becomes the duty of the town to construct the same within a reasonable time. If it fails so to do the county board may cause the same to be done and the cost thereof shall be deducted from the damages allowed such town, or collected as in the case of an assessment for benefits (G. S. 1913, § 5563), thus leaving the town with the wreckage to use as it may see fit.

As bearing upon the matter of damages the court instructed the jury in substance as follows:

"For illustration * * * so that you may follow this measure of damages more clearly in your mind, if it will cost the town $150 to build a permanent culvert or bridge to span the run naturally there now, and it will cost $700 to build a bridge or culvert at the same place after the ditch is built or constructed, the difference in cost would be $550, and to that difference the town in such case would be entitled to as damages; to that amount of difference there must be added the value of the culvert or bridge there now and being destroyed by the building of the ditch—and if the value of such destroyed bridge is $50, then the entire damage that the town would sustain and that it would be entitled to recover would be the sum of $600."

This instruction is challenged by appellant's assignment of error No. 12. We are forced to the conclusion that, notwithstanding the theory

upon which the case was tried, the measure of damages as thus impressed upon the jury is so out of keeping with the provisions of the statute as to necessitate a new trial.

It was upon the bridges provided for in the engineer's report that the viewers based their estimate of benefits and damages. The burden was upon demandant to overcome such assessments. State v. Nelson, 116 Minn. 424, 133 N. W. 1010. Having failed to offer any testimony as to the kind of bridges provided for in the engineer's report, or what the same would cost, there is a total lack of evidence bearing upon the true measure of damages.

Counsel for appellants, in his brief, urges that the demandant is not entitled to recover damages in any amount under the rule announced in Chicago, M. & St. P. Ry. Co. v. Sprague, 140 Minn. 1, 167 N. W. 124. We are unable to concur in this contention. It was there held that the obligation was, under its charter and the police power, upon the railroad company to construct and maintain a necessary bridge across the channels of the public ditch, and that it was not entitled to recover damages therefor. The rule in that case is not applicable to the case at bar. It is as much the policy of the drainage law to better and improve the highways of the state, as it is to reclaim wet and marshy lands for agricultural purposes, and to that end provision was made to assess benefits to the highways where the same were improved and to reimburse municipalities by way of damages where injury was done.

The order refusing a new trial is reversed.