ELICK ERICKSON v. COUNTY OF STEARNS.
HUBERT DRIESSEN v. SAME DEFENDANT.[1]

January 5, 1934.

Nos. 29,701, 29,702.

*Theodore F. Neils,* for appellants.
*James J. Quigley,* for respondent.

[1]Reported in 252 N. W. 219.

*LORING, Justice.*

These are two cases which were consolidated and tried before the court, which made findings in favor of the defendant. The plaintiffs have appealed from separate orders denying their motions for a new trial.

Plaintiffs are the owners of land along the shore of Little Birch lake in Todd county. That lake is a navigable body of water, by far the larger portion of which is in Todd county, but the outlet of which is in Stearns county. Sometime in 1930 a petition signed by various property owners along the shores of said lake was presented to the county board of Stearns county asking that a dam be installed at the outlet of the lake which would raise the level of its waters. The county board caused the lake to be surveyed by the county surveyor and passed a resolution purporting to fix the lake level at a point higher than the natural high-water mark. After negotiations with the state game and fish department the board passed a resolution agreeing to pay one-half of the expense of the construction of the dam as petitioned for.

The state game and fish department constructed the dam, and the water was raised to a point which flooded a part of the plaintiffs' lands, to their substantial damage. When in the spring of 1931 it became apparent that the lake inundated parts of the plaintiffs' farms, the county board ordered the dam cut down and later had it entirely blown out. The board refused to pay the state game and fish department any part of the expense of constructing the dam.

These suits were brought to recover damage for the flowage and to restrain further maintenance of the dam. The defendant answered denying that it caused the construction of the dam or that it had maintained the same. Upon the trial the court found that it had neither constructed nor maintained the dam nor had it ratified or adopted the action of those persons who had constructed the dam. The court took the view that whatever action the county board took toward fixing the lake level or in negotiating with the state game and fish department in regard to the construction of the

dam was *ultra vires*. That question is the principal one presented upon this appeal.

■ The control over navigable waters wholly within the state lies in the legislature, and by 2 Mason Minn. St. 1927, § 6588, it has delegated to the counties the right to establish a uniform height at which the waters of a navigable lake the whole or major part of whose waters lie within the county shall be maintained. It authorizes the county to acquire land and erect dams where necessary to carry out its purposes in raising lake levels. This law does not confer upon the county board of Stearns county any authority whatever relative to a lake the major portion of which lies outside of that county.

The plaintiffs have very earnestly contended that the erection of the dam was within the scope of the county's authority and that it was the intent of the legislature to confer upon counties the control of navigable waters within their boundaries; but, obviously, whatever may have been the intent of the legislature, it wholly failed by the act cited to confer any authority upon a county with regard to a navigable lake the major portion of which lies in some other county. No rule of construction permits us to include a lake of this character within the powers conferred upon counties by this law. The law as it stands simply leaves in the legislature its inherent power over intrastate navigable waters in so far as it applies to a lake situated as was Little Birch lake unless it is practical for Todd county to control its level. Therefore the county board of Stearns county was wholly without authority to construct, maintain, or operate a dam which might control the height of water in that lake, and it was equally without authority to establish a uniform height at which the waters should be held. The acts of the county board in this regard were *ultra vires* in the primary sense.

The plaintiffs in their effort to avoid the effects of the doctrine of *ultra vires* rely largely upon the case of Viebahn v. Board of Co. Commrs. of Crow Wing County, 96 Minn. 276, 104 N. W. 1089, 3 L.R.A.(N.S.) 1126. The court there recognized the well settled rule that a municipal corporation, not being liable for the *ultra*

*vires* acts of its officers, cannot make itself liable by ratification except where it had the power in the first instance or at the time of the ratification to authorize the act. In that case the county board of Crow Wing county wholly without authority and contrary to an act of congress had erected a bridge across the Mississippi between Brainerd and Grand Rapids where that stream was navigable by steamboats. It thereby obstructed the waters of that stream for navigation purposes. When action to abate the nuisance was brought by the owners of a line of steamboats operating upon that part of the river the county board demurred to the complaint, and this court held that its action in so doing was equivalent to conduct insisting on the right to maintain the bridge and in effect ratifying and adopting the *ultra vires* act. It followed Schussler v. Board of Co. Commrs. of Hennepin County, 67 Minn. 412, 70 N. W. 6, 39 L. R. A. 75, 64 A. S. R. 424, and held that inasmuch as the defendant county did not, when the action was brought against it, repudiate the act of its commissioners, plaintiff was entitled to recover. Without at this time going into the logical soundness of the rules laid down in the Viebahn and Schussler cases, we see a clear distinction between both of these cases and the case at bar. In the Schussler case the county board in its answer asserted its right to maintain the dam which was there sought to be abated, and in the Viebahn case this court held that by its demurrer the county placed itself in the same position. In the cases at bar we are confronted with an entirely different situation. The county board here answered and denied that it constructed or maintained the dam and upon the trial showed that it repudiated its agreement to share in the costs. Soon after it became aware of the damage caused by the dam it sought to and did abate the nuisance which had been created. Under these circumstances we see no reason why the doctrine of *ultra vires* should not be applied in its full force to the situation, and we hold that the trial court was right in holding that there was no liability on the part of the county.

Plaintiffs claim that the defendant did not plead *ultra vires* and therefore that it cannot take advantage of that doctrine. The defendant pleaded that it did not build or maintain the dam, and

it took no position in the pleading which was equivalent to a ratification within the doctrine of the two cases cited herein. Moreover, the courts take judicial notice of the topography of the state and of the boundaries of the navigable waters therein. 2 Dunnell, Minn. Dig. (2 ed.) § 3459. Therefore the complaint showed upon its face that it was beyond the powers of the county board of Stearns county to fix the level of water in Little Birch lake or to establish a dam to control the same. In the absence of the doctrine laid down in the Schussler and Viebahn cases, the complaint would have been demurrable. In that situation we do not think that it was incumbent upon the defendant to go further than it did when it interposed an answer denying all responsibility for the erection or maintenance of the dam. With that in the case, the conduct *ultra vires* appeared from the face of the complaint and was available as a defense though not specifically pleaded.

The orders of the trial court are affirmed.