## MATT NOSTDAL v. COUNTY OF WATONWAN.[1]

March 22, 1946.

No. 34,133.

[1]Reported in 22 N. W. (2d) 461.

378

*Samuel B. Wilson, William C. Blethen,* and *Arthur H. Ogle,* for appellant.

*C. J. Manahan,* for respondent.

JULIUS J. OLSON, JUSTICE.

Judicial ditch No. 7 of Watonwan and Blue Earth counties was established in 1913. Plaintiff's land was included in the drainage area which the ditch was designed to drain and was taxed for its pro rata share of the cost of the improvement.

The drainage project as laid out by the engineer crossed a county road in Watonwan county known as the Madelia-Lake Crystal road. The viewers awarded the township of Madelia, wherein the road is located, the sum of $900, which was the estimated cost of constructing a culvert or bridge across the highway. In that amount the

ditch fund was charged, and that sum, "either directly or indirectly through said township," came into defendant's possession. In the "construction of said culvert or bridge the defendant negligently, willfully, and wrongfully * * * so built and constructed said bridge or culvert (or adopted the bridge or culvert already there) so that the base thereof projected * * * about three feet above the grade of the bottom or flow line" of the ditch. This, it is said, resulted in "a dam" holding back the flow of water intended and designed to pass through the bridge or culvert. Thus conditions remained until 1921, when four individuals (plaintiff was not one of them) sought and obtained an alternative writ of *mandamus* directing defendant to "rebuild, construct, and remodel said bridge, over and across the highway * * * and to open up a passageway in said Judicial Ditch where it passes through said highway." Defendant, in its return and answer to the writ, stated that "at a meeting of said [county] board [of Watonwan county] on this date it was unanimously voted, and decided by said board, to comply with the said order and writ." Defendant thereupon undertook to carry out the requirements of the writ. In doing this work, defendant "did so in such a negligent, wrongful, willful, and careless manner" that the new culvert installed by it has become "out of line and for some reasons unknown to the plaintiff, said second culvert does not work adequately and is not doing the things for which it was constructed, * * * and indeed has never been a success in permitting said water to flow freely from said open ditch"; and that, by reason of the failure of the second culvert to do the work for which it was constructed, the flow of water in the ditch has become obstructed and the water made stagnant, resulting in an accumulation in the bottom of the ditch of mud and dirt.

Again there was a long delay, in fact until 1943, when certain landowners whose land had been assessed for the construction of the ditch petitioned the court for an order directing the county auditors of Watonwan and Blue Earth counties to let a contract "for the removal of said accumulated dirt and mud in said open

ditch and to have said ditch cleaned out to the depth that it was originally constructed." Such contract was duly let "in the fall of 1944." The contractor furnished the usual public contractor's bond. Under the terms of the construction contract, the work was "to be completed during the summer of 1945." The contract price was $5,563.50. Plaintiff demands:

(1) That defendant be ordered and directed to remove from the highway the inefficient and inadequate culverts placed therein and that a new culvert or bridge be constructed so as to permit the water to freely pass through it as originally designed;

(2) That judgment be entered against defendant in the amount of the contract price, "with direction that said money when collected be paid into the ditch fund for the benefit of said Judicial Ditch No. 7 and credited to the property owners who will be assessed for the cleaning of said open ditch"; and

(3) That he have costs and disbursements and such other relief as to the court may seem proper.

Plaintiff brought the present action on March 31, 1945. On April 9, 1945, defendant demurred to the complaint on the ground that the facts pleaded did not state a cause of action. From an order sustaining the demurrer, this appeal is taken.

■ Under our system, "forms of proceedings in civil actions, and the rules by which the sufficiency of pleadings is to be determined, shall be governed by statute." Minn. St. 1941, § 544.01 (Mason St. 1927, § 9249); Minn. Const. art. 6, § 14. Plaintiff's complaint "shall contain * * * a plain and concise statement of facts constituting a cause of action, without unnecessary repetition," and "a demand for the relief desired" by him. § 544.02 (§ 9250). Six grounds for demurrer are given to defendant, only the sixth being here involved, i. e., "That the facts stated do not constitute a cause of action." § 544.03 (§§ 9251 and 9252).

■ While good practice requires that a complaint be so drawn that a definite theory is presented as to the nature of the cause and the relief sought, we have repeatedly held that mere absence of

such theory is not a ground for demurrer, since the pleading may be made more definite and certain on motion, or an election may be compelled. In other words—

"* * * The test of a complaint on general demurrer is not whether it states the precise cause of action intended, or whether the pleader appreciated the nature of his remedy, or asked for appropriate relief, but whether the facts stated, expressly or inferentially, giving to the language the benefit of all reasonable intendments show the plaintiff to be entitled to some judicial relief." 5 Dunnell, Dig. & Supp. § 7528a, and cases cited in notes 34, 37, and 42.

Also helpful on this phase are cases cited under §§ 7549 and 7724. The rule stated above has been consistently followed since Canty v. Latterner, 31 Minn. 239, 241, 17 N. W. 385. One of our late cases sustaining the holding is Lucas v. Medical Arts Bldg. Co. 207 Minn. 380, 383, 291 N. W. 892, 894.

■ A demurrer raises an issue of law only and is for the court's determination. No fact question is involved, nor does it include a mixed question of law and fact. A demurrer admits all material facts well pleaded, including all necessary inferences or conclusions of law which follow from such facts. The complaint is to be liberally construed, and if by such construction it can be shown that facts are stated entitling plaintiff to any relief, whether legal or equitable, the complaint is not subject to demurrer. Smith v. Smith, 204 Minn. 255, 257, 283 N. W. 239, 240.

With these principles in mind—and as to these counsel are not likely to be in disagreement—we next consider the question whether the complaint here shows plaintiff entitled to judicial relief.

The demurrer was sustained upon defendant's theory that a county is not liable for the negligence of its officers in the discharge of duties imposed upon its board of commissioners in ditch proceedings, since the drainage statutes prescribe the procedure for the establishment and maintenance of county and judicial ditches. In his brief, plaintiff says that in building and maintaining the culvert defendant's county board did not build or maintain it "for

the purpose of improving the highway. It [the county] was acting in compliance with a duty demanded by the drainage project. It was meeting that call and certainly not acting in the betterment of the highway." Rather, so he asserts, liability accrued because defendant's officers were "negligent" and their efforts "futile" in the performance of the county's "statutory duty," and because thereof damage has resulted to plaintiff "and others similarly situated." He then proceeds to expound his ideas as follows:

"We have a rule or law in Minnesota arising out of our statutory procedure for the construction of county and judicial drainage systems that holds that a county is not liable for neglect by its officers to perform the duties imposed upon the Board of County Commissioners, but the statutes provide the procedure for the establishment of county and judicial ditches."

The theory upon which the grant of immunity is founded—

"is simply this: It is because under the drainage laws the Board of County Commissioners who have no interest in the drainage system one way or another, have been made servants of the state in construction, repair and maintenance of such drainage system. They are the government. The state had to have someone to act for it in carrying out the drainage laws which are enacted and enforced because of the public welfare and public necessity. The most feasible and practicable method was to use the Board of County Commissioners in each county. In the drainage scheme of the statute, the county is an agency of the state. The state requires the county to finance the undertaking. If all goes well, assessments for benefits will pay the cost of the project. The county is not a party, in the sense that a landowner is, nor in a proprietary capacity, and its property interests are not involved as are those of a landowner whose land is affected by assessments, nor is it a party to the proceedings at all except as an agency of the state charged with the financing and working out of the project."

In substance and effect, plaintiff has adopted the text found in 2 Dunnell, Dig. & Supp. § 2821a, and the cases there cited.

· Supporting the text as stated by plaintiff and to illustrate several factual instances where the county's nonliability was sustained by this court, the following, amongst many other cases, may be helpful:

In Dosdall v. County of Olmsted, 30 Minn. 96, 14 N. W. 458, 44 Am. R. 185, the county was held not liable in a negligence action for its failure to keep in repair a walk appurtenant to its courthouse. In Thompson v. County of Polk, 38 Minn. 130, 131, 36 N. W. 267, two county ditches were constructed through plaintiff's land. The work was done "so carelessly, negligently, defectively, and unskilfully as to cause and permit the water in the ditches to escape and overflow" his land. We held that the county, as such, was not liable either for defects or lack of efficiency in the plan of the ditch, and that the negligence of the contractor who did the work did not make the county liable.

Gaare v. Board of Co. Commrs. 90 Minn. 530, 97 N. W. 422, is a case upon which defendant heavily relies. There, liability was sought to be imposed upon Clay county because it had failed to repair a state ditch, a duty imposed upon its county board to keep the system in repair. We held (90 Minn. 531, 532, 97 N. W. 423):

"* * * It is now well settled in this country and state that counties are involuntary corporations, organized as political subdivisions of the state for governmental purposes, and are not liable for the neglect of their officers or agents, unless expressly made so by statute."

The legislative acts upon which that case rests are interesting, and we shall relate only the essentials. By L. 1893, c. 221, eight specific Red River Valley counties had within their borders large areas of land sadly in need of drainage. The stated purposes of the act were "the opening of closed watercourses leading into the Red river and its tributaries, and for opening existing streams in the Red river valley, * * * for drainage purposes." An appropriation of $100,000 was made out of the state's general revenue fund to bring about the needed relief. The Great Northern Railway Com-

pany was required to deposit with the state treasurer, to the credit of a state board created by the act, a sum equal to one-fourth of the state's appropriation to help bring about the hoped-for improvement. Then, by L. 1895, c. 164, the same counties were granted an additional amount of $50,000 for further drainage of lands within their respective borders. Included within the area were 270,740 acres of swampland granted by the federal government to the state "of the value of upwards of one million five hundred thousand (1,500,000) dollars." That appropriation was made supplementary to the former one under L. 1893, c. 221. Then, by L. 1897, c. 318, a board of state drainage commissioners was created. That board was charged with "the care, custody, control and supervision, * * * of all drainage ditches in this state constructed pursuant to" the prior cited acts. Under that act, the state board was required to appoint a competent engineer, who should make report to the county commissioners of the respective counties in which these ditches were located and the conditions thereof. He was required also to furnish the county commissioners "a detailed statement of all repairs and work necessary to be done to preserve said ditches from injury and to make them efficient drains and preserve them from a growth of weeds or accumulation of debris." By § 3, the duty was placed upon the county boards "of every county in which such ditches or drains are located to cause said ditches to be repaired and placed in a condition prescribed by" the state board; and "Any expense thereof shall be paid out of the general county fund." Section 5 imposed upon each such county board the duty "to protect and keep in repair said ditches, and they are hereby authorized to do such work as shall be necessary therein in addition to such work as shall be prescribed by the said state board."

These were the enactments upon which plaintiff Gaare relied when he sued Clay county for damages on the alleged ground (90 Minn. 531, 97 N. W. 423) "that the county had neglected and refused to repair the ditch [Felton State Ditch, completed in 1896] in compliance with the recommendation of the state board, by

reason of which neglect a large quantity of water escaped through the break in the defective ditch, overflowing plaintiff's land to his injury." Certain cribwork had been constructed by the county at the ditch outlet. The state commissioners notified the commissioners of Clay county that there was a break in the cribwork and directed that this be fully restored and that the weeds be removed where they obstructed the channel. There, as here, the county board failed to discharge its duties. In both cases, the predominant purpose was the drainage of wet land so as to make farming and cultivation thereof feasible; and in both this was a matter of such public benefit and importance as appropriately to bring the proceedings within the state's authority to act. In both instances there was negligent failure to comply with duly imposed duties. Harm resulted because of inefficiency and neglect on the part of public officers. As a matter of applicable principle, it is difficult to find a distinction between the Gaare case and this one.

■ The drainage law as it was when the present ditch was established (G. S. 1913, §§ 5526, 5527) imposed upon the engineer the duty of making an itemized tabulation of the construction of all bridges or other construction work found necessary, together with the estimated cost thereof; and he was required to make a detailed and complete report of his doings and submit therewith necessary plans and specifications. In Town of Lisbon v. Counties of Yellow Medicine and Lac qui Parle, 142 Minn. 299, 302, 172 N. W. 125, 126, where we had occasion to consider the question presented, this was our holding:

"* * * The kind and size of the bridges throughout should have been, and presumably were, provided for in the plans and specifications of the engineer, which must necessarily have been confirmed in the order establishing the ditch. * * * The plans and specifications, after being confirmed by the court in the order establishing the ditch, become final and conclusive, unless modified or changed as provided by the statute."

■ The reason for the county's immunity to suit in cases of this type is that it acts as an agency of the state.

"The authority of the legislature to enact drainage laws is derived from the police power, the right of eminent domain, or the taxing power, and is undoubted. * * * It is founded in the right of the state to protect the public health, and provide for the public convenience and welfare." Lien v. Board of Co. Commrs. 80 Minn. 58, 62, 82 N. W. 1094, 1095.

In that case, L. 1887, c. 97, was attacked on various constitutional grounds. The act was sustained. Our subsequent legislative enactments and decisions have followed and applied the principles there announced.

■ In Defiel v. County of Clay, 169 Minn. 79, 210 N. W. 626, the construction contract provided, in accordance with the order establishing the ditch, that openings should be made in the spoil bank wherever designated by the county board or the engineer in charge. Plaintiff sought relief on the theory that the county was negligent in failing to provide such openings. His land was flooded by reason thereof, and he sought damages. We held (169 Minn. 81, 210 N. W. 627)—

"that a county is an involuntary corporation organized as a political subdivision of the state for governmental purposes and is not liable for the negligence of its officers or agents unless expressly made so by statute;" that it is merely "a governmental agency * * *; that the [drainage] statute provides the manner and extent to which a county can be made liable in drainage matters, and that it can be made liable in no other way."

*Cf.* State v. Holmes, 162 Minn. 173, 202 N. W. 440.

■ The final and conclusive force of the order establishing a public ditch is that of a judgment *in rem*. That was definitely our holding in Lupkes v. Town of Clifton, 157 Minn. 493, 497, 196 N. W. 666, 668, where we held:

"The legislature has given to the order establishing a public ditch all of the final and binding force of a judgment in rem. Therefore, finally and for all purposes, as against the world, the res, the subject matter of the proceeding, and all property rights affected

thereby, are settled, fixed in a new status to be again altered only by some authority competent to effect a change and proceeding according to law."

It is therefore plainly to be seen from the recited facts and the arguments presented in plaintiff's brief to which we have referred that he is not unmindful of the binding force and finality of the order establishing this ditch. His argument to avoid defeat is that defendant acted in its proprietary capacity when it undertook the job of constructing the culvert; that it did this work as it wanted it to be done instead of doing it according to the plans and specifications of the engineer; that, since it was paid to accomplish this purpose, it became its duty as the proprietor of the culvert to do the job efficiently and without negligence; and that, since its negligence in construction and maintenance was the direct cause of the additional expenditure of $5,563.50, it should bear that entire burden.

That defendant negligently violated its statutory duty clearly appears, as well as the fact that harm has resulted from such failure. Just as apparent is the fact that defendant's failure arose out of and in the course of the drainage proceeding. Defendant's duty was an integral part thereof. No one in the more than 30 years since the drainage project was established has thought otherwise. If plaintiff's contention of proprietary ownership is to be given effect, is he not faced with our statutes of limitations, whether that be under the usual six-year limitation (cf. G. S. 1913, § 5565; Plaster v. County of Aitkin, 135 Minn. 198, 160 N. W. 493), or even the 15 years in actions relating to real estate? His cause and that of other landowners whom he represents arose out of the drainage proceedings and as such was *in rem*. A drainage system under our law is in its nature and purpose one requiring continuous attention. The present case demonstrates that. In 1921 and again in 1943 relief was sought and obtained; and, insofar as legal directions are concerned, no one doubts (and this includes plaintiff) that the court was possessed of jurisdiction to so act.

He or other landowners under the provisions of the drainage law invoked that jurisdiction.

■ It is well to bear in mind that before a drainage project may be set in motion a petition "setting forth the necessity thereof and that it [the improvement] will be of public benefit or promote the public health" must first be filed with the proper officer, the county auditor if a county ditch, the clerk of court if a judicial ditch. G. S. 1913, § 5525. In due course, an engineer is appointed, and, under § 5526, he is required to give bond in the amount of $5,000 "for the use of such county or counties, as the case may be, and also for the use of all parties who may show themselves to be aggrieved or injured by any negligence or malfeasance on his part in acting as such engineer." He is required to include in his report the forms of contracts to be made with the respective contractors, "which [forms] shall contain detailed and complete specifications" of the various types of work to be done. Only after the report of the engineer has been prepared and filed, after the viewers have been appointed and performed their duties, after statutory notice to all parties involved in the drainage proceedings has been given and served, and only if at the final hearing the board or court also finds that the total cost of the project, including damages awarded, is less than the benefits to the property embraced in the drainage area, "and that said work will be of public utility or benefit, or will promote the public health," can such final order be made. *Id.* § 5532. In determining what property is to be assessed for benefits, we are guided by § 5549, which provides:

"All lands owned by this state, and all lands owned by any railroad or other corporation, benefited by any such ditch, drain or water course, shall be liable for such benefits the same as [other] taxable lands."

As to culverts and bridges, § 5563 provides:

"The county auditor shall notify each municipal, railroad and other corporation to construct any bridge or culvert across or upon its road or right of way within a reasonable time named in such

notice. If any such work is not done within the time limited, the board of county commissioners may cause the same to be done, and the cost thereof shall be deducted from the damages allowed such corporation, or collected from it as in case of an assessment for benefits."

Section 5564 provides:

"The amount that any tract of land, public or corporate road or railroad shall be liable for on account of the location, construction and establishment of any ditch or ditches under the provisions of this chapter, or on account of the repair thereof, shall in no event exceed the benefits which will accrue thereto as determined in the proceedings for such location, construction and establishment or repair."

It is important to note that in C. M. & St. P. Ry. Co. v. Sprague, 140 Minn. 1, 167 N. W. 124, we held that it was the uncompensated duty of the railway company to build a new bridge across the new channel provided for in the drainage proceeding. There, the viewers had allowed the company $10,000 as damages sustained by it in the construction of a new bridge over the new channel as provided for in the drainage project. There was an appeal by the railway company, a jury trial was had, and a verdict of $16,000 was returned for the company. On appeal we reversed, our conclusion being (140 Minn. 7, 167 N. W. 126) "that the railway company was, under the police power, bound to construct the bridge at its own cost. It was not entitled to a verdict in any sum." In the later case of Town of Lisbon v. Counties of Yellow Medicine and Lac qui Parle, 142 Minn. 299, 172 N. W. 125, *supra*, defendant counties contended that the Sprague case was authority under the mentioned section for holding that the cost of culverts and bridges was a township obligation. We concluded otherwise, holding (142 Minn. 304, 172 N. W. 127) that "The rule in that case is not applicable to the case at bar." In other words, under the drainage law, if a township or other municipality derives benefits by reason of the improvement, the viewers will assess the benefits so accruing,

and it must bear that burden in the same proportion as other benefited property. If damages are found, these are to be deducted from the assessment. If damages exceed benefits, the difference is allowed as such and must be met out of the total benefits found. In the present case, no benefits were assessed against either the township or county. Instead, damages were awarded to compensate the township for the cost of construction of the culvert. This sum in some fashion came into defendant's possession. Obviously, it stepped into the shoes of the township and, as such, succeeded to the benefits and the burdens of the township—no more and no less.

Plaintiff has cited no case arising out of or in the course of a drainage proceeding where liability for official neglect was imposed upon the county. Nor have we found any such case. We have, however, found cases that at first blush might be said to be analogous to what he thinks the law should be. These are cases where the counties have sought escape from liability under the defense of *ultra vires*.

In Schussler v. Board of Commrs. 67 Minn. 412, 70 N. W. 6, 39 L. R. A. 75, 64 A. S. R. 424, the county board caused a dam to be erected across Minnehaha Creek. Plaintiff owned, for power purposes, a dam located below the new structure. Thereby, the headwaters originally available to him were substantially reduced. He sought and obtained injunctive relief and damages. We affirmed, saying, in the light of the issues made by the pleadings and the record below (67 Minn. 416, 70 N. W. 7, 39 L. R. A. 80, 64 A. S. R. 427):

"This is therefore not a mere act of negligence of the board of county commissioners in the performance of an official duty, but an active and affirmative tort, done under claim of statutory authority and duty, and justified upon such ground by defendant, and *that it was performed within the scope of the board's official duty.* * * * Not only this, but *it insists upon retaining the benefits of the illegal acts of its officers. It is not willing that the wrong shall cease,* but aggressively insists that it will make no reparation for

its past tort, and that it has a legal right to enjoy in the future all of the benefits secured through an unconstitutional law." (Italics supplied.)

In the later case of Viebahn v. Board of Co. Commrs. 96 Minn. 276, 104 N. W. 1089, 3 L.R.A. (N.S.) 1126, we followed and applied the law laid down in the Schussler case. Both cases were considered, discussed, and distinguished in Erickson v. County of Stearns, 190 Minn. 433, 252 N. W. 219. There, the defense of *ultra vires* was sustained. Referring to these cases, we said (190 Minn. 436, 252 N. W. 220):

"* * * Without at this time going into the logical soundness of the rules laid down in the Viebahn and Schussler cases, we see a clear distinction between both of these cases and the case at bar. In the Schussler case the county board in its answer asserted its right to maintain the dam which was there sought to be abated, and in the Viebahn case this court held that by its demurrer the county placed itself in the same position."

In Austin v. Village of Tonka Bay, 130 Minn. 359, 153 N. W. 738, the Schussler and Viebahn cases were cited. Under L. 1905, c. 164, authority was granted to counties having more than 150,000 population to make certain improvements of the type in question without the consent or concurrence of defendant village. We there held that the village was not liable by reason of the cited act, but that the county was, saying (130 Minn. 364, 153 N. W. 740):

"* * * it is entirely competent for the legislature to give a county control over public highways within the village to any extent it may see fit. The county constructed the improvement in question under direct authority from the legislature. In doing so it took plaintiffs' property within the meaning of the Constitution. The Constitution prohibited it from taking such property 'without just compensation therefor first paid or secured.'"

In Lindstrom v. County of Ramsey, 136 Minn. 46, 49, 161 N. W. 222, 223, liability was imposed because—

"In the matter of the improvement of highways, the acts of the town board in case of town roads, and of county boards in case of county roads, within the general scope of the powers and duties of such boards, are the acts of the municipality, so that if such acts result in damages to adjacent lands, for which a private owner would be liable if caused by acts done by him on his own land, such municipality would be liable."

In Boye v. City of Albert Lea, 74 Minn. 230, 234, 76 N. W. 1131, where we held that the city was by its charter granted power to regulate and control the flow of waters of Fountain Lake within the city, we held:

"In this case it not only does not appear that the act complained of was ultra vires, in the sense above stated, but, on the contrary, it affirmatively appears from the complaint, read in connection with the city charter, that the act was done by the city in the execution of its corporate powers, to wit, the regulation and control of the flowage of the waters of Fountain Lake, but in such a negligent or unlawful way as to injure the plaintiff by overflowing his land."

In Olson v. County of Roseau, 164 Minn. 452, 205 N. W. 372, plaintiff sought damages and mandatory injunctive relief to remove a culvert and restore a fill so as to reinstate a county ditch to its original design and construction. Defendant Spruce township had taken out a fill in the ditch embankment and put in its place a culvert, thereby permitting waters accumulated by a branch ditch to overflow plaintiff's farm. The trial court awarded judgment against the township only. It appealed from an order denying a new trial. We affirmed, saying (164 Minn. 454, 205 N. W. 373):

"The answer pleaded no excuse or justification for meddling with the fill in the lateral made by the county board. The unchallenged finding is that the act of defendant in removing the fill and installing the culvert unreasonably, unnecessarily and wrongfully caused the waters accumulated in the branch ditch to come onto plaintiff's land in destructive quantities. *There is no finding that*

*defendant* [*township*] *had been assessed for benefits to its road or property in County Ditch No. 11. No jurisdiction over county ditches is given by statute to town boards.* Upon the pleadings and findings the *defendant was a wrongful intermeddler and plaintiff, having suffered damages therefrom,* as found, *was entitled to the relief ordered in the conclusions of law."* (Italics supplied.)

■ We have cited and quoted extensively from our prior decisions in drainage cases, seeking thereby to find solution of the issues presented. The other cases cited and to which we have referred are to our minds so obviously distinguishable from the facts here presented as to be of no aid to plaintiff's claimed cause. And, since he must rely upon the facts pleaded to obtain any judicial relief, he is necessarily limited, and so are we, to what he there alleges. We have fully recited the facts upon which his cause is founded. A careful consideration of these makes it abundantly clear that he relies upon official negligence or inefficiency alone as the basis for his right of recovery. This being so, the arguments in his brief with respect to defendant's proprietary interest and ownership cannot supply what his complaint does not include. Other cases bearing on this phase are cited and discussed in 8 Minn. L. Rev. 164, and 26 *Id.* 293 and 613.

■ With respect to what was done by defendant in 1921, it must be apparent that defendant, "not being liable for the *ultra vires* acts of its officers, cannot make itself liable by ratification except where it had the power in the first instance or at the time of the ratification to authorize the act." Erickson v. County of Stearns, 190 Minn. 433, 435, 436, 252 N. W. 219, 220. Such authority it has never had.

Order affirmed.

LORING, CHIEF JUSTICE (dissenting).

In establishing the ditch, the state for convenience delegated to the county a part of its sovereign power. When that had been exercised, the specifications determined, and the cost levied against the benefited property, the drainage rights of the owners of the

property so benefited became as well established, according to the ditch specifications, as if nature, when it shaped the terrain, had provided such drainage. Those rights could no more be infringed with impunity than could they be interfered with if nature had established them. The county, in both its sovereign and corporate capacities, was as firmly bound to respect the drainage rights of the landowners in the one case as in the other. It could not damage plaintiff's property by damming up water without acquiring the right to do so. Schussler v. Board of Commrs. 67 Minn. 412, 70 N. W. 6, 39 L. R. A. 75, 64 A. S. R. 424. This liability and the effect thereon of Minn. Const. art. 1, § 13, as amended, is fully discussed in Austin v. Village of Tonka Bay, 130 Minn. 359, 365, 153 N. W. 738, 740. Where, as here, property was damaged by the county's departure from the bridge specifications confirmed in the ditch proceedings, that damage fell entirely outside the scope of the proceeding and was not done by the county in its sovereign capacity in the establishment of the ditch. The ditch, as established and assessed for, became the basis of plaintiff's rights, including the right to the free flow of water at the level fixed in the proceedings. Any interference with such flow constituted an invasion of plaintiff's rights if it dammed up his drainage.

When the ditch had been established, the county no longer functioned in its sovereign capacity, but approached the problem of building a bridge across the ditch in its capacity of road and bridge builder, and the rules of liability, as applied to counties acting in that capacity, applied. It even received the cost of construction, necessitated by such establishment, in its corporate capacity as distinguished from the sovereign functions delegated to it by the state. It might or might not expend the entire sum appraised to it as damages, but it was bound to build to the ditch specifications as confirmed. The situation would be plainer, but, as I see it, no different as to liability, if the ditch had been established before the road was laid out. Then, it would be obvious that, when bridging the ditch, the county was engaged in the same capacity and as clearly within the scope of its powers and subject to the same rule

of liability as it would be in building any other bridge. The applicability of the rule of liability in Lindstrom v. County of Ramsey, 136 Minn. 46, 49, 161 N. W. 222, 223, would be clear. This court there said:

"It is clear that the work of widening, straightening and raising the grade at the place in question was done in the course and as a means of improving the highway under the contract, and that it was within the general scope of the powers of the county, and within the authority of the county board; therefore the placing of the material, as in this case, in the roadway where it would, without any further act on the part of anyone, fill and obstruct the culvert in question and thereby cause the overflow of the plaintiff's land, is an act for which the defendant is liable.

"In the matter of the improvement of highways, the acts of the town board in case of town roads, and of county boards in case of county roads, within the general scope of the powers and duties of such boards, are the acts of the municipality, so that if such acts result in damages to adjacent lands, for which a private owner would be liable if caused by acts done by him on his own land, such municipality would be liable. Peters v. Town of Fergus Falls, 35 Minn. 549, 29 N. W. 586; Schussler v. Board of Co. [sic] Commrs. of Hennepin County, 67 Minn. 412, 70 N. W. 6, 39 L. R. A. 75, 64 Am. St. 424; Gunnerus v. Town of Spring Prairie, 91 Minn. 473, 98 N. W. 340, 974."

The cases cited by the court there in support of its views are squarely in point.

There is no question of *ultra vires* here involved. The county's duty to build the bridge if the highway was not vacated was clear; and, if it built the bridge, it should have conformed to the ditch requirements. In building it otherwise and in such manner as to dam the ditch water back onto plaintiff's land, it was as much an intermeddler as was the township of Spruce in Olson v. County of Roseau, 164 Minn. 452, 205 N. W. 372, where the county had nothing to do with the obstruction.

In Erickson v. County of Stearns, 190 Minn. 433, 252 N. W. 219, the dam complained of was erected by the county officers wholly without even apparent authority in the county. (They raised the level of a navigable lake which was largely in Todd county.) In Schussler v. Board of Commrs. 67 Minn. 412, 70 N. W. 6, 39 L. R. A. 75, 64 A. S. R. 424, the county was held liable for erecting a dam which impaired lower water rights. It could not do so even with legislative authority without acquiring the right by condemnation or otherwise.

Whether the demurrer should be sustained depends, as say the majority, on whether on any theory the complaint states a case. As I see it, it states a case for relief from a continued nuisance. It alleges, in substance, that the county, in constructing the bridge, erected and still maintains a dam three feet in height across the ditch as established. Whether the prayer requests the appropriate relief is beside the point. It is no part of the statement of the cause of action. 1 Pirsig's Dunnell, Minn. Pleading, § 123.

I think there should be a reversal.

PETERSON, JUSTICE (dissenting).
I concur in the dissent.

MR. JUSTICE YOUNGDAHL prior to his resignation had indicated his concurrence in the views expressed in the dissent.

